**Donald SORRELLS, Plaintiff,**

v.

**VETERANS ADMINISTRATION, et al., Defendants.**

No. C–1–82–551.

United States District Court, S.D. Ohio, W.D.

Dec. 20, 1983.

Paul H. Tobias, Cincinnati, Ohio, for plaintiff.

John Cruze, Nicholas Pantel, Asst. U.S. Attys., Cincinnati, Ohio, for defendants.

## OPINION AND ORDER FINDINGS OF FACT AND CONCLUSIONS OF LAW

SPIEGEL, District Judge.

### I. BACKGROUND

Prior to April of 1980, the plaintiff, Donald Sorrells, had been employed by the Veterans Administration (VA) for roughly twenty-five years. During this period of employment, Sorrells rose to the position of Medical Administrative Assistant (MAA), a position of considerable responsibility, which requires the MAA on duty to serve as the sole representative of the hospital administration during non-business hours. The record reflects that Sorrells performed his job satisfactorily and that his work exceeded requirements in many respects (Plaintiff's Exh. 4).

Beginning in midyear of 1978, Sorrells began to accumulate absences at an increased rate. Throughout the latter part of 1978 and all of 1979 a pattern developed with Sorrells' absences occurring most frequently in proximity to holidays or scheduled days off. Sorrells testified that this was a particularly difficult period of his life, during which he experienced a variety of health problems as well as some domestic turbulence. Prior to these developments in 1978 and 1979, Sorrells had never had disciplinary action taken against him in twenty-three years of service with the VA.

Sorrells' absenteeism became a source of tension between him and the VA. In October of 1979 the VA initiated a program of sick leave certification for Sorrells. This program required that, when absent, Sorrells provide the VA with a physician's statement that he was instructed to remain at home or that he was fully incapacitated during the relevant period, and that this statement be provided within two days after return to duty. In February of 1980, the VA made the sick leave certification program more stringent by requiring the physician's statements to specifically state the particular duties Sorrells was unable to perform.

Sorrells was formally disciplined on several occasions during this period. He responded to some of these disciplinary actions by filing Equal Employment Opportunity (EEO) complaints, alleging that he was being discriminated against on the basis of his race. Sorrells also requested and received the opportunity to confer with a representative from the Office of the Inspector General in February, 1979 concerning circumstances surrounding his employment.

In February, 1980, Sorrells was absent from work for several days. Upon his return to duty, he tendered a physician's statement which was rejected by his supervisor due to non-compliance with the requirements of the February, 1980 heightened sick leave certification. On February 29, 1980, as a result of these and other attendance problems, the VA proposed that Sorrells be removed from his employment. The notice of proposed removal informed Sorrells that he would remain on active duty until a final determination was made and implemented. Sorrells did not return to duty after receiving the notice of proposed removal, but the record reflects some contact with the VA to inform them that his ill health continued and that he would inform the VA when he was able to return to duty. On March 14, 1980 the VA issued notice to Sorrells that he would be removed from his employment on April 5, 1980.

Sorrells appealed his removal to the Merit Systems Protection Board (MSPB) pursuant to applicable statutes and regulations. *See* 5 U.S.C. §§ 7511, 7512, 7513(d), 7701 (1982); 5 C.F.R. §§ 752.401(a), (b)(1); 752.405(a) (1982).

Sorrells premised his appeal on two grounds. First, that his removal was retaliatory in nature, motivated by the VA's attitude towards his previous filing of EEO complaints and his meeting with the representative of the Inspector General, and second, that the removal action was contrary to agency regulations since it was not for such cause as would promote the efficiency of the service.

Upon the initial hearing of the plaintiff's appeal, the MSPB affirmed the removal action. The presiding official concluded that the removal was not in the nature of a reprisal and was for such cause as would promote the efficiency of the service. (*See* Final Opinion and Order of the MSPB, Plaintiff's Exh. 39). Plaintiff then petitioned the MSPB for review of the presiding official's decision pursuant to 5 U.S.C. § 7701(e)(1) (1982). This petition was granted in regard to the February, 1980 events leading to plaintiff's dismissal and the initial determination on this part was reviewed by the entire Board. In its final decision, the MSPB permitted the earlier conclusion that the removal action was not a reprisal to stand. However, the MSPB concluded that the requirement of greater specificity in the February, 1980 sick leave certification was arbitrary and unreasonable and that the removal penalty was too harsh in light of twenty-five years of governmental service. The MSPB concluded that a thirty day suspension would be the maximum penalty warranted. Furthermore, the MSPB directed Sorrells to consider the suspension a final warning to correct his attendance record.

The final opinion and order of the MSPB was filed on July 30, 1982. Shortly thereafter, both Sorrells and the VA received notice of the MSPB's decision. Sorrells had been working at a Sears Department Store, but had concluded that he would need to resign from this job to resume his position with the VA. On August 18, 1982, Sorrells received a call from the Assistant Chief of the VA Personnel Office who informed him that if he returned to duty, another proposed removal notice would be issued to him upon his return. When Sorrells returned to duty on August 30, 1982 he was presented with a notice of proposed removal concerning, with two exceptions, his absence after receipt of the February 29, 1980 notice of proposed removal (post-notice absence).

Sorrells worked in his former capacity at the VA Hospital from August 30, 1982 until October 29, 1982 without any attendance or job performance problems. During this time, Sorrells responded to the proposed removal action in timely fashion including an affidavit attesting to his illness during February and March of 1980. Plaintiff also included a letter from his attorney requesting that the VA reconsider the proposed removal in light of the MSPB's July 30, 1982 decision and this lawsuit which was pending at that time. Nevertheless, after concerted but fruitless attempts to timely obtain medical certifica-

tion of Sorrells' illnesses in 1980, the VA decided to remove Sorrells and issued a removal notice on October 25, 1982, effective October 29, 1982.

Sorrells appealed this removal to the MSPB, claiming that this action was a reprisal for his previous filing of EEO complaints and pending litigation in federal court. Additionally, Sorrells contended that his discharge was violative of the agency's rules and regulations governing disciplinary actions. The MSPB held a hearing on June 2, 1983, but as yet has rendered no decision.

## II. JURISDICTIONAL QUESTIONS

In this action, plaintiff has named as defendants, the VA and Robert P. Nimmo, in his official capacity as administrator of the VA. The plaintiff initiated this action May 28, 1982, within thirty days of receiving a notice of rejection of his claim and right to sue from the Equal Employment Opportunity Commission (EEOC). This notice related to a discrimination complaint filed on May 4, 1979. The circumstances have changed considerably since the filing of this action and the current circumstances are reflected in the amended pleadings. In the amended complaint (doc. 12) plaintiff seeks damages and declaratory and injunctive relief. Plaintiff advances the following theories: First, that the April 5, 1980 removal constituted action in reprisal against the plaintiff for the exercise of his rights in filing EEO complaints and conversing with a representative of the Inspector General; second, that the October 29, 1982 removal was in violation of the applicable VA rules and regulations regarding the imposition of disciplinary action, and, that these irregularities violated plaintiff's constitutional right to due process of law; third, that the October 29, 1982 removal was in retaliation against the plaintiff for the exercise of his rights to file EEO complaints, to file appeals with the MSPB and EEOC, and to file suit in federal district court in seeking redress of grievances regarding his employment; and fourth, that the October 29, 1982 removal was effected in violation of plaintiff's First Amendment

rights since the retaliatory action outlined above violates the plaintiff's right to freedom of speech.

Because the existence of independent remedies for the alleged constitutional deprivations may depend on whether plaintiff falls within the scope of the protections of Title VII, analysis of the jurisdictional questions must begin with a preliminary inquiry concerning the application of that Title. Whether plaintiff is entitled to the protections of § 717 of Title VII is a matter not in dispute. Section 717, codified at 42 U.S.C. § 2000e–16(a) (1976 & Supp. IV 1980), extends the right to freedom from discrimination in employment to employees in executive agencies. Defendants do not deny that the VA is such an executive agency, nor do they deny the fact of plaintiff's former employment with the VA.

■ Dealing next with plaintiff's contention that the second discharge violated his First Amendment rights of freedom of speech, we conclude that this claim is not properly before this Court. In *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), the Supreme Court concluded that Congress intended § 717 of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e–16 (1976 & Supp. IV 1980)), to supplement existing remedies and therefore § 717 "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Id.* at 835, 96 S.Ct. at 1969. It is clear in light of the *Brown* decision, that plaintiff's claim alleging infringement of his First Amendment rights cannot stand. This result is also supported by the reasoning in the recent decision of *Bush v. Lucas*, —— U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1982). There the Supreme Court declined to create an implied remedy for alleged violations of a federal employees' First Amendment freedom of speech rights where an elaborate remedial system which reflects a careful balancing of policy decisions is available.

■ We conclude that plaintiff's claim that the VA failed to follow its own rules and regulations and thereby violated his

constitutional right to due process of law is also not properly before this Court. Since the plaintiff is a federal employee within the coverage of § 717 of the Civil Rights Act of 1964 as amended, and may avail himself of both the administrative and judicial remedies that flow from that section, we conclude that the only issues before us for decision are those which arise under § 717, 42 U.S.C. § 2000e–16 (1976 & Supp. IV 1980).

■ Plaintiff advances two claims of retaliatory discharge both of which he claims are within the ambits of § 717 and are properly before this Court. Preliminarily, we conclude that Congress intended to include available remedies against retaliatory discharges when it amended the 1964 Civil Rights Act in 1972 and extended its coverage to employees of the federal government. On this point, we agree with the statutory analysis of the Ninth Circuit in *Ayon v. Sampson*, 547 F.2d 446, 449–50 (9th Cir.1976). There, the Court concluded that 42 U.S.C. §§ 2000e–16(d), 2000e–5(g), 2000e–3(a) (1976 & Supp. IV 1980) when read together as directed by internal cross-references, and when read in light of pertinent legislative history,[1] convey the clear intent of Congress to incorporate protections against retaliation in § 2000e–16.

■ Resolution of the question whether the retaliatory discharge claims are properly before this Court demands an analysis of the applicable administrative procedures. Since the enactment of the Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1192 (codified in scattered sections of 5 U.S.C.) jurisdiction over personnel actions regarding government employees has been divided between the EEOC and the MSPB. The current relationship between these two agencies has been sufficiently summarized as follows:

> The dispute between the relative jurisdictions of the EEOC and the MSPB was resolved in the Reform Act by giving the EEOC sole jurisdiction over 'pure' EEO cases, cases in which only discrimination issues were raised or cases where there were no appeal rights to the MSPB. The MSPB was given concurrent authority over all adverse action and appeals of 'pure' EEO cases, and exclusive jurisdiction where a procedural violation or other issue under the civil service regulations was raised where the MSPB would have had jurisdiction in the absence of an EEO claim. The EEOC review of MSPB decisions was limited to EEO claims. Otherwise, the MSPB had all of the EEO enforcement authority previously held by the CSC [(Civil Service Commission)]. The Act preserved the right to judicial trial *de novo* over all EEO claims regardless of the administrative body adjudicating them, and made it clear that the Title VII standard governed the award of attorney fees.

B. Schlei & P. Grossman, *Employment Discrimination Law*, 1190 (2d ed. 1983) (footnotes omitted) (citing generally 5 U.S.C. §§ 7701–7703 (1982); S.Rep. No. 969, 95th Cong., 2d Sess. 56–60, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2778–82; H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 136–42, *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860, 2869–72). In light of applicable law reflected in this summary, we conclude that the MSPB had jurisdiction over the first retaliatory discharge claim concurrent with that of the EEOC. A removal is an adverse action for which the employee against whom such action is taken has a right of appeal to the MSPB. 5 U.S.C. §§ 7512(1); 7513(d) (1982). In a case where the employee claims that removal was based on an impermissible discriminatory motive proscribed by § 717, the employee has the option of pursuing remedies under EEO procedures or by appealing directly to the MSPB. 5 C.F.R. § 1201.154(c) (1982). In this case, the plaintiff timely filed his appeal with the MSPB and pursued his remedy through the applicable procedures, resulting in the final

---

**1.** H.R. No. 92–238, 92d Cong., 2d Sess. *reprinted in* 1972 U.S.Code Cong. & Admin.News pp. 2137, 2157–58.

order of the MSPB which left undisturbed the initial determination by the presiding official that the first termination was not in the nature of a reprisal against the plaintiff. Since plaintiff pursued to conclusion his administrative remedies with regard to the first discharge, we consider the reprisal issue to be appropriate for judicial review here.

■ We also conclude that this Court has jurisdiction over the second retaliatory discharge claim, for substantially the same reasons. In his protest against the 1982 discharge, plaintiff alleges that the removal was in the nature of a reprisal. As indicated above, this claim is properly pursued through either EEO or MSPB procedures. However, plaintiff also alleges that the removal was effected in violation of applicable rules and regulations regarding the imposition of discipline. This additional allegation characterizes the 1982 removal claim as a "mixed cause" claim. Since the EEOC regulations deal only with issues relating to discrimination, (*see* 29 C.F.R. § 1613 (1981)), if the claimant wishes to preserve his claim relating to proper procedures, the only remedy is through the MSPB.

The record reflects that plaintiff timely filed an appeal of his removal in 1982 with the MSPB. It is also clear that the MSPB has conducted a hearing but as yet has not issued an opinion. Thus the issue arises whether the plaintiff's claim of reprisal relative to the 1982 removal is prematurely before this Court, and whether the plaintiff must await a decision from the MSPB before he can be said to have exhausted his administrative remedies, and correspondingly, before this Court may assert jurisdiction.

We conclude that the plaintiff has exhausted his remedies with respect to the second reprisal claim, notwithstanding the fact that the MSPB has yet to render a decision. Our analysis starts with 5 U.S.C. § 7702(a)(1) (1982) which provides in part:

(a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection, in the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by—

(i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16)....

. . . .

(v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph.

the Board shall, within 120 days of the filing of the appeal, decide both the issue of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.

*Id.*

Section 7702(e)(1) provides in part:

(e)(1) Notwithstanding any other provision of law, if at any time after—

. . . .

(B) The 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section, there is no judicially reviewable action (unless such action is not as the result of the filing of a petition by the employee under subsection (b)(1) of this section);

. . . .

an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), or section 16(b) of the Fair Labor Standards Act of 1938 (29 U.S.C. 216(b)).

5 U.S.C. § 7702(e)(1) (1982).

Read together, we think these sections confer upon the claimant the right to file a civil action under § 717 after giving the MSPB 120 days opportunity to act. This reading of 5 U.S.C. §§ 7702(a)(1), (e)(1) is supported by the legislative history of the

Civil Service Reform Act, H.R.Conf.Rep. No. 95–1717 provides in part:

There are in all eight different times when the employee may have the right to bring suit in Federal district court. They are as follows:

1. 120 days after filing a complaint with the employing agency even if the agency has not issued a final decision by that time.

2. 30 days after the employing agency's initial decision.

3. *120 days after filing a petition with the MSPB if the MSPB has not yet made a decision.*

4. 30 days after an MSPB decision. If the employee petitions EEOC to review the matter and EEOC denies the petition, the 30-day period in this case runs from the denial of such a petition by EEOC.

5. 30 days after the EEOC decision, if EEOC agrees with the MSPB.

6. 30 days after MSPB reconsideration if MSPB agrees with the EEOC.

7. 30 days after the special panel makes a decision.

8. 180 days after filing a petition with the EEOC for reconsideration of an MSPB decision, if a final agency decision by EEOC, MSPB, or the Panel has not been reached by that time.

If a suit is brought in district court, the rules of equity provide that minor procedural irregularities in the administrative process for which the employee is responsible should not predetermine the outcome of the case.

H.R.Conf.Rep. No. 95–1717, 95th Cong., 2d Sess. 141–42 *reprinted in* 1978 U.S.Code Cong. & Ad.News 2860, 2875 (emphasis

added). Because there is sufficient evidence in the record to permit us to conclude that at least 120 days have passed between plaintiff's filing his appeal with the MSPB and filing his amended complaint alleging the second reprisal claim [2] and no decision has yet been rendered, we conclude that plaintiff has exhausted his administrative remedies and that jurisdiction over the second reprisal claim is proper.

■ One remaining jurisdictional issue must be discussed. Ordinarily, the judicial review of a MSPB decision regarding a non-EEOC claim is conducted by the Court of Claims or one of the Circuit Courts of Appeals. *See generally* 5 U.S.C. § 7703 (1982). Thus the question arises whether this Court has jurisdiction to determine whether the 1982 discharge was effected in violation of applicable rules and regulations. A similar issue arose in *Wiggins v. United States Postal Service*, 653 F.2d 219 (5th Cir.1981). In *Wiggins*, the discharged employee sought review of an adverse decision of the MSPB regarding his discharge on a "mixed cause" theory. The Fifth Circuit held that the district court was the proper court for review of a MSPB decision concerning discrimination under 5 U.S.C. § 7703(b)(2) (1982). Furthermore, the Circuit Court declined to retain jurisdiction over the non-discrimination claims although they would ordinarily have exclusive jurisdiction over such claims on review from the MSPB. Instead, the Court held that the language of the statute conferring jurisdiction on the district court (5 U.S.C. § 7702(a)(1)) and the desirability of avoiding the waste of judicial resources that bifurcation would entail, justified finding

2. The following elements of the record support the conclusion that at least 120 days passed between plaintiff's filing of his MSPB appeal and the filing of his amended complaint raising the issues that relate to the second removal:
1. The Notice of Removal provided the plaintiff by the VA informed plaintiff that:
(a) the removal was effective October 29, 1982 and
(b) an appeal to the MSPB must be filed no later than 20 days after the effective date of the action. (Defendants' Exh. GG).

2. Since the MSPB held a hearing on June 2, 1983 a timely petition must have been filed. (*See* Plaintiff's Exh. 91). Therefore, the last day an appeal could have been filed would have been November 18, 1982. The 120 days from November 18, 1982 would expire on or about March 18, 1983. Plaintiff's amended complaint (doc. 12) setting forth the second reprisal claim was filed with this Court on March 23, 1983.

**1262**

jurisdiction of the district court proper as to all claims involved in a mixed cause case.

We agree with the reasoning of the Fifth Circuit that the district courts have jurisdiction over non-discrimination issues as well as discrimination issues in a mixed cause case. Judge Randall's opinion demonstrates that both the applicable statute, conferring jurisdiction on the district court, and the legislative history refer to "cases which involve discrimination." *See* 5 U.S.C. § 7702(a)(1) (1982); S.Rep. No. 95–969, 95th Cong., 2d Sess. 63 (1978) *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2785. We also agree that judicious use of scarce judicial resources is a significant factor weighing in favor of avoiding piecemeal resolution of a discharged employee's mixed claim.[3]

We therefore conclude that the following issues are properly before the Court. Whether the 1980 removal was a reprisal against the plaintiff for his previous filing of EEO complaints and his previous conversations with a representative of the Inspector General; whether the 1982 removal was a reprisal against the plaintiff for his previous filing of EEO complaints, conversations with a representative of the Inspector General, filing of MSPB appeals, and filing of employment discrimination litigation in federal court; and whether the 1982 removal was effected in violation of applicable rules and regulations promulgated by the VA.

## III. SUBSTANTIVE ISSUES

■ We first address the issue of whether the 1980 removal was a reprisal. The analytical framework constructed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973) is equally applicable in reprisal actions. *See e.g., Burrus v. United Telephone of Kansas, Inc.*, 683 F.2d 339, 343 (10th Cir.1982); *Grant v. Bethlehem Steel Corp.*, 622 F.2d 43, 46 (2d Cir.

1980). The *McDonnell Douglas* approach requires the plaintiff to first establish a prima facie case of reprisal. The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory business reason for the alleged acts of reprisal. The burden of production then shifts back to the plaintiff to show that the articulated non-discriminatory reason was actually pretextual. 411 U.S. at 802–05. It is the burden of production that shifts during the course of the proceedings. In contrast, the ultimate burden of proof, requiring demonstration of acts of reprisal by a preponderance of the evidence, rests with the plaintiff throughout. *See Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 1095, 67 L.Ed.2d 207 (1981).

Judge Porter, of this Court, has defined the plaintiff's prima facie case in a claim of retaliatory discharge as follows:

1. that he engaged in a protected activity (such as filing an EEOC charge);

2. that the employer knew of this protected activity;

3. that he was subsequently discharged or subjected to other damages; and

4. that the employer had a retaliatory motive or that the timing of its action was such as to allow an inference of retaliation to arise.

*Sutton v. National Distillers Products Co.*, 445 F.Supp. 1319, 1325–26 (S.D.Ohio 1978), *aff'd*, 628 F.2d 936 (6th Cir.1980).

■ With respect to the 1980 removal, we conclude that plaintiff has failed to establish by a preponderance of the evidence that his discharge was in the nature of a reprisal. The VA has introduced evidence that plaintiff was using considerable amounts of sick leave during late 1978, 1979, and the early part of 1980. Moreover, the VA has demonstrated a pattern of

---

**3.** We do not think the absence of an MSPB decision in this case is a sufficient distinction to compel a result different from that reached in *Wiggins*. The issue of whether plaintiff's second discharge was in violation of applicable rules and regulations has been fully addressed by

counsel in building the record. Furthermore, the two issues are inextricably intertwined, since a violation of applicable rules and regulations may be circumstantial evidence of a retaliatory motive.

plaintiff's use of sick leave on days in close proximity to holidays or scheduled days off. This Court is satisfied that the imposition of discipline in February, 1980 was justified by a legitimate, non-retaliatory business reason and that this reason was not pretextual. While the degree of discipline meted out by the VA was later deemed too severe by the MSPB and reduced from removal to a thirty day suspension, this fact is insufficient support for plaintiff's reprisal claim. The VA may well have erred in its attempt to correct a readily apparent attendance problem, but not every administrative error is properly considered discriminatory or retaliatory in nature. The MSPB order of July 30, 1982 rectified the error, and this Court will accept the MSPB's disposition of the matter as reasonable and justified.

■ Digressing from the reprisal issue, we next consider whether the VA deviated from its written procedures, rules and regulations in implementing the 1982 removal. There are several aspects of the 1982 removal that this Court finds disturbing. The second removal was instituted as discipline for plaintiff's post-notice absences two and one-half years earlier. The VA had disciplined plaintiff for substantially similar behavior at the time of occurrence, but had neglected to include the days when plaintiff did not report for work after receiving the notice of proposed removal. As explanation of this omission, the VA advances its opinion that addressing these additional days would require it to have filed additional proposed disciplinary actions for each additional period of absence since there was no date certain when plaintiff's absences would end. This argument appears incredible in light of the following excerpt from the VA Manual:

> Additional evidence acquired after the issuance of a proposed adverse action may be added without necessitating reissuance of the proposed adverse action unless the additional evidence forms the basis for initiating new reasons for proposing the action.

VA Manual MP–5 Chapter 752 p. 3 (Sept. 16, 1974) (Plaintiff's Exh. 58). When these words are given their ordinary meaning, it is clear that the VA could have addressed the post-notice absenteeism in 1980 had it so desired. According to the notice of proposed removal the reason for proposing removal in 1980 was habitual absenteeism. The post-notice days were merely additional instances of that reason and not the basis for new reasons for seeking removal.

The VA may have been under no affirmative duty to address plaintiff's post-notice absence in 1980. However, when the section quoted above is read in conjunction with other sections of the VA manual urging prompt corrective action (Plaintiff's Exh. 58, p. 1; p. 3(5)(a)) it is clear that the VA's written policies on timeliness of discipline were at best strictly construed against the plaintiff. This strict construction is particularly disturbing where, as here, it is in direct conflict with the notion of double jeopardy, a fundamental premise of our society's method of disciplining wrongdoers. We do not suggest that plaintiff has any concrete double jeopardy rights that attach in disciplinary procedures within the VA. However, a construction of regulations in a manner that carefully circumvents such a fundamental principle may create an inference of improper motive in administering discipline.

The VA has walked close to the line in regard to some of its policies and regulations, it has clearly crossed the line in regard to other policies. Section 5a of MP–5, Part I, Chapter 752 of the VA Manual provides:

> a. Determining the Facts. In every case, *to determine what action is warranted,* inquiry will be made into the incident or situation as soon as possible. Ordinarily, this inquiry will be made by the appropriate line supervisor. *The employee who is alleged to have committed the offense and any other persons* who may have pertinent information about the case *will be questioned,* and signed statements will be obtained. Information will be developed impartially and a reasonable effort will be made to recon-

cile conflicting statements by developing additional evidence. In all cases, the information obtained will be documented. *Id.* at 3. (emphasis added) (Plaintiff's Exh. 58).

Undeniably, this section provides that the employee alleged to have committed the infraction will be questioned to determine what action is warranted. By clear implication this section contemplates making inquiry of the employee before a determination is made as to what action is appropriate. The VA never questioned the plaintiff about his absences before issuing the notice of proposed removal. Indeed, the record reflects that the only contact between the VA and the plaintiff, during the period of time after the MSPB back to work order and the issuance of the notice of proposed removal, was a phone call from a VA personnel officer to inform plaintiff that he would be issued a notice of proposed removal upon returning to duty. This is a clear violation of the VA's self-imposed standards.

Similarly, we think the VA's proposal of removal was premature when viewed against the sick leave certification of October 12, 1979. That certification provides in part:

3. Because of the amount and pattern of sick leave use, you will be required to submit a physician's statement for each absence due to alleged illness. *This statement must be submitted to your supervisor no later than two days after you return to duty,* and must specifically state the days for which the physician considers you fully incapacitated for duty.

Plaintiff's Exh. 14 (emphasis added).

This sick leave certification was still in effect when plaintiff returned to duty on August 30, 1982. According to the terms of this sick leave certification, plaintiff could have complied fully with its requirements as late as September 1, 1982. Nevertheless, the VA made the decision to begin the disciplinary process and issued the notice of proposed removal alleging failure to comply with this certification before the two day period had elapsed. The initiation of a disciplinary process is never so untimely as when an infraction has yet to be committed. We cannot help but conclude that, in this respect, the VA failed to abide by the ground rules it had established.

■ Returning to consideration of the reprisal issues, this Court concludes that plaintiff has established by a preponderance of the evidence that his discharge in 1982 was in reprisal for his previous filing of EEO complaints and his pursuit of his first reprisal claim in this Court. That plaintiff engaged in protected activity is a matter of record. The VA and those acting on its behalf were aware of this activity and were aware that plaintiff was returning to duty as a result of such activity. The only matter requiring deliberation is whether the plaintiff's discharge was motivated by an impermissible retaliatory motive or by a legitimate, non-retaliatory business reason.

The degree of causation required on the motive issue is a matter of some dispute. *See generally,* B. Schlei & P. Grossman, *Employment Discrimination Law* 560–61 (2d ed. 1983). For purposes of this action, we assume, but do not decide, that the plaintiff must demonstrate that the adverse action would not have occurred absent an impermissible motive. *See, e.g., Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Even under this most stringent standard, we conclude that plaintiff has successfully shouldered his burden of proof.

For obvious reasons, proof of a retaliatory motive is accomplished by introducing circumstantial evidence. Briefly outlined below is the circumstantial evidence upon which we base our conclusion that the 1982 discharge is a reprisal. First, the MSPB Final Opinion and Order contained the following paragraph:

Under all the circumstances, however, it appears that removal would be harsh and not for the efficiency of the service in view of our finding that all but two of

the charges were not sustained and appellant's long record of service. We find, instead, that a 30-day suspension would be the maximum penalty warranted. Appellant should consider this penalty as a final warning to correct, as best he can, his record of attendance.

(Plaintiff's Exh. 39, p. 8). We view this admonition as relating to plaintiff's prospective behavior. However, the VA proposed removal before plaintiff had an opportunity to act upon this warning. Furthermore, the VA pursued this course of action notwithstanding an awareness on the part of persons in the decision making process that less drastic means of dealing with plaintiff's past absences were available. The VA took the position that the MSPB order "did not eliminate" seeking removal under the circumstances. We also note that the Director of the Cincinnati VA facility testified that he made the final decision to propose removal without considering the MSPB order.

Second, the instances of the VA's noncompliance with agency procedures create the inference of a retaliatory motive. *See EEOC v. Operating Engineers, Locals 14 and 15*, 438 F.Supp. 876, 883–84 (S.D.N.Y. 1977). We have detailed above the manner in which the VA has either violated its regulations or strictly construed those regulations to the plaintiff's disadvantage. We incorporate those comments in this segment of our opinion as they contribute significantly to our conclusion that plaintiff's second removal was based on a retaliatory motive.

Finally, the testimony of plaintiff's top level supervisor convinces this Court that plaintiff would not have been fired absent an impermissible retaliatory motive. The VA asserts that the plaintiff's lackadaisical attitude towards work, manifest in his absences, rendered his removal one "for such cause as will promote the efficiency of the service," as required by 5 U.S.C. § 7513(a) (1982). This position is undercut by the testimony of plaintiff's top level supervisor to the effect that avenues short of removal were available and that he would have pro-

ceeded on such avenues if plaintiff had admitted his absence in 1980 was a violation of the VA rules. This Court is of the opinion that this testimony creates a strong inference that plaintiff was not discharged for business reasons.

One other issue merits discussion, whether reinstatement is appropriate in this case. Fashioning a remedy for a violation of Title VII is left to the sound discretion of the trial court. *See e.g., Albermarle Paper Co. v. Moody*, 422 U.S. 405, 421, 95 S.Ct. 2362, 2373, 45 L.Ed.2d 280 (1975). In the exercise of that discretion, some courts have declined to order reinstatement where the employment relationship is shattered beyond repair. *See Fitzgerald v. Sirloin Stockade, Inc.*, 624 F.2d 945, 957 (10th Cir.1980); *Hyland v. Kenner Products Co.*, 11 Empl.Prac.Dec. (CCH) ¶ 10,926 at 7,912–13 (S.D.Ohio 1974). Nevertheless, after analyzing the evidence and weighing the appropriate factors, we conclude that in this case the plaintiff should be reinstated to his previous position with the VA.

Our decision to order reinstatement is based on our conclusion that the plaintiff's employment relationship with the VA is not irreparably damaged. Plaintiff's top level supervisor testified that he would have welcomed him back had plaintiff regarded his past absences differently. Furthermore, plaintiff performed his job adequately during the two months he returned to duty in 1982 notwithstanding the fact that the VA had proposed a second removal.

We comment that our opinion should not be read as exonerating or condemning the actions of anyone involved in this litigation. This case represents an instance in which communications between individuals deteriorated to the extent that judicial resolution of their dispute became necessary. In performing this necessary function, we have arrived at the result we think the law requires. However, we suggest that the responsibility for a failure in communication never rests entirely with one side of the dispute. We express our sincere hope that

all involved will approach their employment relationships with a spirit of cooperation and professionalism.

## IV. SUMMARY

Having had the opportunity to observe the demeanor and credibility of the witnesses, their alignment with the parties and their interest in the litigation, and to determine the inferences to be drawn from their testimony, we make the following findings of fact and conclusions of law.

### A. *Findings of Fact*

1. The plaintiff has failed to prove by a preponderance of the evidence that the 1980 removal constituted a retaliatory discharge. Even assuming that plaintiff established a prima facie case, we find the reason for disciplinary action articulated by the VA legitimate and non-retaliatory. At that point in time, the plaintiff's habitual absence did impair the efficiency of the VA's operations.

2. The plaintiff has established by a preponderance of the evidence that the VA effected his removal in 1982 in violation of its own rules and regulations. The initiation of the disciplinary process was premature in two respects. First, the VA failed to conduct an investigation into the absences underlying the discharge before proposing removal. More fundamentally, according to the sick leave certification of October 12, 1979, no violation of that certification requirement had occurred when the VA proposed removal.

3. The plaintiff has established by a preponderance of the evidence that his discharge in 1982 was a reprisal for his previous filing of EEO complaints and reprisal claims. We base our conclusion on this issue on the evidence detailed above, including:

   a. The VA's willingness to interpret its regulations in a manner severely disadvantageous to the plaintiff.

   b. The VA's action removing plaintiff was inconsistent with the spirit, if not the letter, of the July 30, 1982 MSPB order.

   c. The final decision to terminate plaintiff's employment was made without consideration of the MSPB order.

   d. The VA violated its own rules and regulations in effecting plaintiff's removal.

   e. The VA proceeded to remove plaintiff despite the fact that he performed his duties satisfactorily for the two months during which his proposed removal was pending.

   f. Participants in the VA's decision-making process were aware of less drastic means for resolving issues surrounding plaintiff's 1980 absences, but did not discuss these options with the plaintiff. This factor is particularly striking since the plaintiff's top level supervisor testified that he would have been inclined to pursue these options had plaintiff demonstrated a contrite attitude towards his post-notice absences.

### B. *Conclusions of Law*

1. Since plaintiff is indisputably an employee in a federal executive agency, he is entitled to the protections of Title VII pursuant to 42 U.S.C. § 2000e–16 (1976 & Supp. IV 1980).

2. The protections afforded federal government employees by reason of 42 U.S.C. § 2000e–16 include the protection against retaliatory action comprised in 42 U.S.C. § 2000e–3 (1976).

3. Proper jurisdiction does not lie in this Court to hear plaintiff's claims of constitutional violations. The Supreme Court's holdings in *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976) and *Bush v. Lucas*, — U.S. ——, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983) indicate that Title VII is the sole remedy for claims of discrimination in federal employment for a federal employee covered by that statute.

4. Jurisdiction is proper for this Court to entertain both of plaintiff's retaliatory discharge claims. Plaintiff has pursued his administrative remedies for the first re-

moval to a final disposition by the MSPB. With regard to the second removal, plaintiff has the right to bring action in this Court having given the MSPB 120 days to act as contemplated by 5 U.S.C. §§ 7702(a)(1), (e)(1) (1982).

5. Adopting the reasoning in *Wiggins v. United States Postal Service*, 653 F.2d 219 (5th Cir.1981), we conclude that in this mixed cause case, this Court has jurisdiction to determine whether the VA failed to follow stated procedures in effecting plaintiff's second removal.

6. As plaintiff has proven that his second discharge was a retaliation in violation of 42 U.S.C. §§ 2000e–3, 2000e–16, he is entitled to equitable remedies available under 42 U.S.C. § 2000e–5.

7. Reinstatement, backpay and retroactive seniority are proper equitable remedies which the Court may, in its discretion, grant to the victim of retaliatory discharge pursuant to 42 U.S.C. § 2000e–5(g) (1976).

## V. REMEDIES

Having determined that plaintiff's second removal was a reprisal, we turn to the question of what remedies are appropriate. § 706(g) of Title VII provides in part:

> If the court finds that the respondent has intentionally engaged in ... an unlawful employment practice charged in the complaint, the court may ... order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement ... of employees, with or without back pay (payable by the employer ... responsible for the unlawful employment practice), or any other equitable relief as the court deems appropriate.

42 U.S.C. § 2000e–5(g) (1976).

Interpreting this section, the Supreme Court has acknowledged that courts have the authority to order reinstitution, retroactive seniority benefits, and backpay to remedy the effects of an unlawful employment practice. *See Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975).

In this case we deem appropriate such relief as will place the plaintiff, as nearly as possible, in the position he would have enjoyed had the retaliatory discharge not occurred. *See Rasimas v. Michigan Dept. of Health*, 714 F.2d 614, 626 (6th Cir.1983). It is therefore ordered that the plaintiff, Donald Sorrells, be reinstated to his position as Medical Administrative Assistant at the Veterans' Administration Hospital in Cincinnati, Ohio. It is also ordered that plaintiff, Donald Sorrells, be provided with back pay for the period commencing on October 29, 1982 and ending when plaintiff returns to duty. This back pay will be reduced by amounts earned by plaintiff during this period pursuant to 42 U.S.C. § 2000e–5(g). Finally, it is ordered that plaintiff, Donald Sorrells, be granted full retroactive seniority, sick leave, vacation pay, pension benefits and other fringe benefits in such fashion as though his employment at the VA Hospital continued uninterrupted from October 29, 1982 until plaintiff's return to duty. We contemplate that compliance with this Order will proceed in accordance with the guidelines set forth in *Rasimas v. Michigan Dept. of Health*, 714 F.2d 614 (6th Cir.1983).

SO ORDERED.