**Perry E. DOYAL, Plaintiff-Appellant,**

v.

**John O. MARSH, Jr., in his official capacity as Secretary of the Army, Defendant-Appellee.**

**No. 85–7050.**

United States Court of Appeals, Eleventh Circuit.

Dec. 12, 1985.

Alvin T. Prestwood, Prestwood & Rosser, Montgomery, Ala., for plaintiff-appellant.

Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., John P. Woodley, Office of JAG, Litigation Div., Peter B. Loewenberg, Dept. of Army, Washington, D.C., for defendant-appellee.

Before HILL and CLARK, Circuit Judges, and MOYE,* Chief District Judge.

MOYE, District Judge:

Perry Doyal appeals from a decision of the district court holding that the Army did not violate his civil rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* when it decided to transfer him and, subsequently, to terminate his employment and that the court did not have jurisdiction to hear Mr. Doyal's civil service claims under the Civil Services Reform Act of 1978, 5 U.S.C. § 7701, *et seq.* The judgment of the district court is affirmed in part and reversed in part. The cause is remanded for further proceedings in accordance with this opinion.

* Honorable Charles A. Moye, Jr., Chief U.S. District Judge for the Northern District of Georgia,

I.

*Facts and Proceedings*

Mr. Doyal, the appellant, is a white male and a former civilian employee with the Army. Specifically, prior to his dismissal, Mr. Doyal served as Chief of the Contracts Branch of the Procurement Division at Fort Rucker, Alabama. Prior to his promotion to this position in 1980, Doyal had served as an intern for nearly seven years.

In April, 1981, Morel Moultry, a black man, became a Procurement Assistant (i.e., under Mr. Doyal's supervision) as part of a settlement of a complaint alleging racial discrimination. Neither Doyal nor his immediate supervisor at that time, Billy Newton, felt that Mr. Moultry was qualified for his job. Rather than forwarding his objections through Mr. Newton's supervisor, Perry Grantham, Deputy Director of Industrial Operations, Doyal complained directly to the Inspector General's office about Mr. Moultry. In a subsequent court proceeding both Doyal and Grantham testified that Moultry was unqualified. As a result, Mr. Moultry was subsequently transferred to another division.

In October, 1981, Mr. Newton retired and was replaced by Peter Polivka. It seems that Doyal and Polivka did not work well together. They had constant disputes over how to run the Contracts Branch of the Procurement Division. When disputes were not resolved to his liking, Mr. Doyal frequently appealed to Colonel Eric Leach, Mr. Grantham's immediate supervisor. Apparently, most disputes were resolved in Doyal's favor. However, several exhibits submitted by both parties attest to the fact that Col. Leach expressed his concern to Doyal about his seeming inability to cooperate with Mr. Polivka.

In May, 1983, a team consisting of a high-ranking military officer from the Inspector General's Office of the Training and Doctrine Command and two civilian experts in procurement from the same of-

sitting by designation.

fice ("Team") inspected the Procurement Division. The Team rendered written and oral reports. The written report was highly critical of the Contracts Branch citing personality conflicts between key personnel "which affect moral, efficiency, productivity and quality." There was testimony during the trial to the effect that the Team made an oral report to Col. Leach specifically identifying Doyal as the source of the problems within the division.

On May 19, following discussions with Grantham and Polivka, Col. Leach decided to transfer Doyal temporarily to another division of Industrial Operations. Mr. Doyal was so informed. As it turns out, appellant's new job was essentially created for him. The appellees claim that they tried to create a job for Doyal of equal stature and for the same pay as his old job; however, they were informed by the civilian personnel officer that his position might be graded at a lower pay scale level.

Col. Leach apparently gave Polivka instructions to insure that Doyal not remove any critical documents from his office. Accordingly, Polivka went down to Doyal's office and asked to review the papers which Doyal had placed in boxes for removal. Doyal claimed that they were personal property and refused to comply. As appel-lant sought to remove one of the boxes from his office, a scuffle ensued and Polivka was knocked to the ground.

The following day, Col. Leach instituted proceedings to have Doyal fired. In a letter dated June 15, 1983, Doyal was informed of his proposed discharge. A hearing was held on August 12, 1983, before Mr. Grantham (Col. Leach was ill at the time) at which Mr. Doyal responded both orally and in writing to the charges against him. In a letter dated September 8, 1983, Mr. Grantham notified Doyal that he would be discharged effective September 16th.

On August 10, 1983, Doyal filed a formal complaint in the Fort Rucker Equal Employment Opportunity office ("Office") alleging that the Army had violated his rights under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Specifically, he alleged that he was punished for his actions and criticisms which led to the transfer of Morel Moultry in violation of 42 U.S.C. § 2000e–3(a). Doyal subsequently sought to amend the EEO charges by adding the fact of his dismissal and by asserting several procedural and substantive discrepancies in his termination pursuant to the Civil Service Reform Act of 1978, 5 U.S.C. § 7701, et seq.[1] The Office informed him

---

1. § 7701. Appellate procedures

(a) An employee, or applicant for employment, may submit an appeal to the Merit Systems Protection Board from any action which is appealable to the Board under any law, rule, or regulation. An appellant shall have the right—

(1) to a hearing for which a transcript will be kept; and

(2) to be represented by an attorney or other representative.

Appeals shall be processed in accordance with regulations prescribed by the Board.

(b) The Board may hear any case appealed to it or may refer the case to an administrative law judge appointed under section 3105 of this title or other employee of the Board designated by the Board to hear such cases, except that in any case involving a removal from the service, the case shall be heard by the Board, an employee experienced in hearing appeals, or an administrative law judge. The Board, administrative law judge, or other employee (as the case may be) shall make a decision after receipt of the written representations of the parties to the appeal and after opportunity for a hearing under subsection (a)(1) of this section. A copy of the decision shall be furnished to each party to the appeal and to the Office of Personnel Management.

(c)(1) Subject to paragraph (2) of this subsection, the decision of the agency shall be sustained under subsection (b) only if the agency's decision—

(A) in the case of an action based on unacceptable performance described in section 4303 of this title, is supported by substantial evidence, or

(B) in any other case, is supported by a preponderance of the evidence.

(2) Notwithstanding paragraph (1), the agency's decision may not be sustained under subsection (b) of this section if the employee or applicant for employment—

(A) shows harmful error in the application of the agency's procedures in arriving at such decision;

(B) shows that the decision was based on any prohibited personnel practice described in section 2302(b) of this title; or

Note 1—Continued

(C) shows that the decision was not in accordance with law.

(d)(1) In any case in which—

(A) the interpretation or application of any civil service law, rule, or regulation, under the jurisdiction of the Office of Personnel Management is at issue in any proceeding under this section; and

(B) the Director of the Office of Personnel Management is of the opinion that an erroneous decision would have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office;

the Director may as a matter of right intervene or otherwise participate in that proceeding before the Board. If the Director exercises his right to participate in a proceeding before the Board, he shall do so as early in the proceeding as practicable. Nothing in this title shall be construed to permit the Office to interfere with the independent decision making of the Merit Systems Protection Board.

(2) The Board shall promptly notify the Director whenever the interpretation of any civil service law, rule, or regulation under the jurisdiction of the Office is at issue in any proceeding under this section.

(e)(1) Except as provided in section 7702 of this title, any decision under subsection (b) of this section shall be final unless—

(A) a party to the appeal or the Director petitions the Board for review within 30 days after the receipt of the decision; or

(B) the Board reopens and reconsiders a case on its own motion.

The Board, for good cause shown, may extend the 30-day period referred to in subparagraph (A) of this paragraph. One member of the Board may grant a petition or otherwise direct that a decision be reviewed by the full Board. The preceding sentence shall not apply if, by law, a decision of an administrative law judge is required to be acted upon by the Board.

(2) The Director may petition the Board for a review under paragraph (1) of this subsection only if the Director is of the opinion that the decision is erroneous and will have a substantial impact on any civil service law, rule, or regulation under the jurisdiction of the Office.

(f) The Board, or an administrative law judge or other employee of the Board designated to hear a case, may—

(1) consolidate appeals filed by two or more appellants, or

(2) join two or more appeals filed by the same appellant and hear and decide them concurrently,

if the deciding official or officials hearing the cases are of the opinion that the action could result in the appeals' being processed more expeditiously and would not adversely affect any party.

(g)(1) Except as provided in paragraph (2) of this subsection, the Board, or an administrative law judge or other employee of the Board designated to hear a case, may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board, administrative law judge, or other employee (as the case may be) determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

(2) If an employee or applicant for employment is the prevailing party and the decision is based on a finding of discrimination prohibited under section 2302(b)(1) of this title, the payment of attorney fees shall be in accordance with the standards prescribed under section 706(k) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–5(k)).

(h) The Board may, by regulation, provide for one or more alternative methods for settling matters subject to the appellate jurisdiction of the Board which shall be applicable at the election of an applicant for employment or of an employee who is not in a unit for which a labor organization is accorded exclusive recognition, and shall be in lieu of other procedures provided for under this section. A decision under such a method shall be final, unless the Board reopens and reconsiders a case at the request of the Office of Personnel Management under subsection (e) of this section.

(i)(1) Upon the submission of any appeal to the Board under this section, the Board, through reference to such categories of cases, or other means, as it determines appropriate, shall establish and announce publicly the date by which it intends to complete action on the matter. Such date shall assure expeditious consideration of the appeal, consistent with the interests of fairness and other priorities of the Board. If the Board fails to complete action on the appeal by the announced date, and the expected delay will exceed 30 days, the Board shall publicly announce the new date by which it intends to complete action on the appeal.

(2) Not later than March 1 of each year, the Board shall submit to the Congress a report describing the number of appeals submitted to it during the preceding calendar year, the number of appeals on which it completed action during that year, and the number of instances during that year in which it failed to conclude a proceeding by the date originally announced, together with an explanation of the reasons therefor.

(3) The Board shall by rule indicate any other category of significant Board action which the Board determines should be subject to the provisions of this subsection.

(4) It shall be the duty of the Board, an administrative law judge, or employee designated by the Board to hear any proceeding under this section to expedite to the extent practicable that proceeding.

Note 1—Continued

(j) The Board may prescribe regulations to carry out the purpose of this section.

Pub.L. 89–554, Sept. 6, 1966, 80 Stat. 530; Pub.L. 95–454, Title II, § 205, Oct. 13, 1978, 92 Stat. 1138; Pub.L. 96–54, § 2(a)(45), Aug. 14, 1979, 93 Stat. 384.

§ 7702. Actions involving discrimination

(a)(1) Notwithstanding any other provision of law, and except as provided in paragraph (2) of this subsection, in the case of any employee or applicant for employment who—

(A) has been affected by an action which the employee or applicant may appeal to the Merit Systems Protection Board, and

(B) alleges that a basis for the action was discrimination prohibited by—

(i) section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16),

(ii) section 6(d) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(d)),

(iii) section 501 of the Rehabilitation Act of 1973 (29 U.S.C. 791),

(iv) sections 12 and 15 of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 631, 633a), or

(v) any rule, regulation, or policy directive prescribed under any provision of law described in clauses (i) through (iv) of this subparagraph,

the Board shall, within 120 days of the filing of the appeal, decide both the issues of discrimination and the appealable action in accordance with the Board's appellate procedures under section 7701 of this title and this section.

(2) In any matter before an agency which involves—

(A) any action described in paragraph (1)(A) of this subsection; and

(B) any issue of discrimination prohibited under any provision of law described in paragraph (1)(B) of this subsection; the agency shall resolve such matter within 120 days. The decision of the agency in any such matter shall be a judicially reviewable action unless the employee appeals the matter to the Board under paragraph (1) of this subsection.

(3) Any decision of the Board under paragraph (1) of this subsection shall be a judicially reviewable action as of—

(A) the date of issuance of the decision if the employee or applicant does not file a petition with the Equal Employment Opportunity Commission under subsection (b)(1) of this section, or

(B) the date the Commission determines not to consider the decision under subsection (b)(2) of this section.

(b)(1) An employee or applicant may, within 30 days after notice of the decision of the Board under subsection (a)(1) of this section, petition the Commission to consider the decision.

(2) The Commission shall, within 30 days after the date of the petition, determine whether to consider the decision. A determination of the Commission not to consider the decision may not be used as evidence with respect to any issue of discrimination in any judicial proceeding concerning that issue.

(3) If the Commission makes a determination to consider the decision, the Commission shall, within 60 days after the date of the determination, consider the entire record of the proceedings of the Board and, on the basis of the evidentiary record before the Board, as supplemented under paragraph (4) of this subsection, either—

(A) concur in the decision of the Board; or

(B) issue in writing another decision which differs from the decision of the Board to the extent that the Commission finds that, as a matter of law—

(i) the decision of the Board constitutes an incorrect interpretation of any provision of any law, rule, regulation, or policy directive referred to in subsection (a)(1)(B) of this section, or

(ii) the decision involving such provision is not supported by the evidence in the record as a whole.

(4) In considering any decision of the Board under this subsection, the Commission may refer the case to the Board, or provide on its own, for the taking (within such period as permits the Commission to make a decision within the 60-day period prescribed under this subsection) of additional evidence to the extent it considers necessary to supplement the record.

(5)(A) If the Commission concurs pursuant to paragraph (3)(A) of this subsection in the decision of the Board, the decision of the Board shall be a judicially reviewable action.

(B) If the Commission issues any decision under paragraph (3)(B) of this subsection, the Commission shall immediately refer the matter to the Board.

(c) Within 30 days after receipt by the Board of the decision of the Commission under subsection (b)(5)(B) of this section, the Board shall consider the decision and—

(1) concur and adopt in whole the decision of the Commission; or

(2) to the extent that the Board finds that, as a matter of law, (A) the Commission decision constitutes an incorrect interpretation of any provision of any civil service law, rule, regulation or policy directive, or (B) the Commission decision involving such provision is not supported by the evidence in the record as a whole—

(i) reaffirm the initial decision of the Board; or

(ii) reaffirm the initial decision of the Board with such revisions as it determines appropriate.

If the Board takes the action provided under paragraph (1), the decision of the Board shall be a judicially reviewable action.

(d)(1) If the Board takes any action under subsection (c)(2) of this section, the matter shall be immediately certified to a special panel described in paragraph (6) of this subsection. Upon certification, the Board shall, within 5

Note 1—Continued

days (excluding Saturdays, Sundays, and holidays), transmit to the special panel the administrative record in the proceeding, including—

(A) the factual record compiled under this section,

(B) the decisions issued by the Board and the Commission under this section, and

(C) any transcript of oral arguments made, or legal briefs filed, before the Board or the Commission.

(2)(A) The special panel shall, within 45 days after a matter has been certified to it, review the administrative record transmitted to it and, on the basis of the record, decide the issues in dispute and issue a final decision which shall be a judicially reviewable action.

(B) The special panel shall give due deference to the respective expertise of the Board and Commission in making its decision.

(3) The special panel shall refer its decision under paragraph (2) of this subsection to the Board and the Board shall order any agency to take any action appropriate to carry out the decision.

(4) The special panel shall permit the employee or applicant who brought the complaint and the employing agency to appear before the panel to present oral arguments and to present written arguments with respect to the matter.

(5) Upon application by the employee or applicant, the Commission may issue such interim relief as it determines appropriate to mitigate any exceptional hardship the employee or applicant might otherwise incur as a result of the certification of any matter under this subsection, except that the Commission may not stay, or order any agency to review on an interim basis, the action referred to in subsection (a)(1) of this section.

(6)(A) Each time the Board takes any action under subsection (c)(2) of this section, a special panel shall be convened which shall consist of—

(i) an individual appointed by the President, by and with the advice and consent of the Senate, to serve for a term of 6 years as chairman of the special panel each time it is convened;

(ii) one member of the Board designated by the Chairman of the Board each time a panel is convened; and

(iii) one member of the Commission designated by the Chairman of the Commission each time a panel is convened.

The chairman of the special panel may be removed by the President only for inefficiency, neglect of duty, or malfeasance in office.

(B) The chairman is entitled to pay at a rate equal to the maximum annual rate of basic pay payable under the General Schedule for each day he is engaged in the performance of official business on the work of the special panel.

(C) The Board and the Commission shall provide such administrative assistance to the special panel as may be necessary and, to the extent practicable, shall equally divide the costs of providing the administrative assistance.

(e)(1) Notwithstanding any other provision of law, if at any time after—

(A) the 120th day following the filing of any matter described in subsection (a)(2) of this section with an agency, there is no judicially reviewable action under this section or an appeal under paragraph (2) of this subsection;

(B) the 120th day following the filing of an appeal with the Board under subsection (a)(1) of this section, there is no judicially reviewable action (unless such action is not as the result of the filing of a petition by the employee under subsection (b)(1) of this section); or

(C) the 180th day following the filing of a petition with the Equal Employment Opportunity Commission under subsection (b)(1) of this section, there is no final agency action under subsection (b), (c), or (d) of this section;

an employee shall be entitled to file a civil action to the same extent and in the same manner as provided in section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), or section 16(b) of the Fair Labor Standards Act of 1938 (29 U.S.C. 216(b)).

(2) If, at any time after the 120th day following the filing of any matter described in subsection (a)(2) of this section with an agency, there is no judicially reviewable action, the employee may appeal the matter to the Board under subsection (a)(1) of this section.

(3) Nothing in this section shall be construed to affect the right to trial de novo under any provision of law described in subsection (a)(1) of this section after a judicially reviewable action, including the decision of an agency under subsection (a)(2) of this section.

(f) In any case in which an employee is required to file any action, appeal, or petition under this section and the employee timely files the action, appeal, or petition with an agency other than the agency with which the action, appeal, or petition is to be filed, the employee shall be treated as having timely filed the action, appeal, or petition as of the date it is filed with the proper agency.

Added Pub.L. 95–454, Title II, § 205, Oct. 13, 1978, 92 Stat. 1140, and amended Pub.L. 96–54, § 2(a)(46), Aug. 14, 1979, 93 Stat. 384.

§ 7703. Judicial review of decisions of the Merit Systems Protection Board

(a)(1) Any employee or applicant for employment adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision.

(2) The Board shall be the named respondent in any proceeding brought pursuant to

that the amendments were accepted and that his EEO complaint would be treated as a "mixed case complaint" under EEO Regulation 1613.406(a). The investigation of appellant's complaint was conducted by the United States Army Civil Appellate Review Agency ("USACARA").

When USACARA had not rendered a report by November 22, 1983, Doyal filed his complaint in the district court. The trial court felt that the action had been filed prematurely. By stipulation, the case was dismissed without prejudice; Doyal refiled his civil action before the United States District Court for the Middle District of Alabama on April 10, 1984.[2]

On June 15, 1984, USACARA rendered its report. Regarding appellant's Title VII claims, USACARA found that the agency had "failed to articulate legitimate, nondis-criminatory reasons" for reassigning and later firing the appellant. Nonetheless, USACARA found that the evidence did not support appellant's Title VII claims. USA-CARA made no ruling regarding appellant's civil service claims, advising him that such claims could only be reviewed through an appeal to the Merit Systems Protection Board ("MSPB"). On September 18, 1984, the Department of the Army rendered a final decision on the appellant's complaint. The Army also found that the appellant had not established his claim of discrimination.

A five-day trial was conducted before District Judge Truman Hobbs. On December 31, 1984, Judge Hobbs issued his opinion in which he found that Doyal's dismissal did not violate his civil rights. Furthermore, the court, sua sponte, concluded that it lacked jurisdiction to decide the appel-

Note 1—Continued

this subsection, unless the employee or applicant for employment seeks review of a final order or decision issued by the Board under section 7701. In review of a final order or decision issued under section 7701, the agency responsible for taking the action appealed to the Board shall be the named respondent.

(b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.

(2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

(c) In any case filed in the United States Court of Claims or a United States court of appeals, the court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) *obtained without procedures required by law, rule, or regulation having been followed; or*

(3) unsupported by substantial evidence; except that in the case of discrimination brought under any section referred to in subsection (b)(2) of this section, the employee or applicant shall have the right to have the facts subject to trial de novo by the reviewing court.

(d) The Director of the Office of Personnel Management may obtain review of any final order or decision of the Board by filing a petition for judicial review in the United States Court of Appeals for the District of Columbia if the Director determines, in his discretion, that the Board erred in interpreting a civil service law, rule, or regulation affecting personnel management and that the Board's decision will have a substantial impact on a civil service law, rule, regulation, or policy directive. If the Director did not intervene in a matter before the Board, the Director may not petition for review of a Board decision under this section unless the Director first petitions the Board for a reconsideration of its decision, and such petition is denied. In addition to the named respondent, the Board and all other parties to the proceedings before the Board shall have the right to appear in the proceeding before the Court of Appeals. The granting of the petition for judicial review shall be at the discretion of the Court of Appeals.

Added Pub.L. 95–454, Title II, § 205, Oct. 13, 1978, 92 Stat. 1143.

**2.** Since more than 120 days had passed since the time the appellant had filed his complaint with USACARA, such filing was proper under 5 U.S.C. § 7702(e)(1). See n. 1, supra.

lant's civil service claims because Doyal had not exhausted his administrative remedies. Accordingly, the court remanded the procedural issues raised under 5 U.S.C. § 7701, *et seq.* to the MSPB in accordance with 5 U.S.C. § 7702(f).

On January 18, 1985, Doyal filed an appeal of the Army's decision to remove him with the MSPB's Atlanta Regional Office. Doyal filed his notice of appeal from the district court on January 24, 1985. On April 17, 1985, the presiding official of the MSPB in Atlanta entered an order dismissing Doyal's appeal for lack of jurisdiction. The official reasoned that Doyal had filed a proper civil action in the district court and had, therefore, through his choice of forum, forfeited his right of appeal to the MSPB. The official further reasoned that, since the district court had improperly dismissed Doyal's civil service claims, his remedy lay with this Court.

Oral argument was heard by this Court on August 21, 1985. At oral argument, the parties informed the Court that the decision of the MSPB in Atlanta had been appealed to the Merit Systems Protection Board in Washington, D.C. ("Washington MSPB"). On September 3, 1985, the Washington MSPB determined that by the time Doyal's appeal was filed before the MSPB in Atlanta (i.e., after Judge Hobbs' dismissal), it was untimely. The Washington MSPB noted that Doyal had consciously elected to file a civil action rather than to appeal the Army's decision to the MSPB. Furthermore, the Washington MSPB felt that the history of the 'case clearly reflected that the appellant had consistently viewed the gravamen of his complaint as being one of alleged civil rights violations of the EEO statute and regulations, and

that the civil service aspects of the district court complaint were merely ancillary to his claim of discrimination by agency officials. Accordingly, the Washington MSPB found the appellant's appeal to be untimely filed under the MSPB's regulations [3] and under 5 U.S.C. § 7702(f) [4], and that good cause had not been shown for waiver of the time limit. Hence, the decision by the MSPB in Atlanta was affirmed but modified to reflect that the basis for the dismissal was that the appeal was untimely.

## II.

### *Discussion*

#### A. *Title VII Claims*

The appellant contends that the trial court erred in its finding that the appellant did not establish a prima facie case of retaliatory discharge under Title VII. The appellant also argues that the trial court erred in not specifically stating its reasons for rejecting the appellant's evidence.

The finding on discrimination is one of ultimate fact. The findings of fact of the district court can be reversed only if they are clearly erroneous, thereby leaving the reviewing court with the definite and firm conviction that a mistake has been made, or if reversible error occurred in applying the law. *Pullman—Standard v. Swint*, 456 U.S. 273, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982); *United States v. United States Gypsum Co.*, 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1948); *Anderson v. City of Bessemer*, 470 U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Maddox v. Claytor*, 764 F.2d 1539 (11th Cir.1985); *Nash v. Consolidated City of Jacksonville, Duval County, Florida*, 763 F.2d 1393 (11th Cir. 1985). Based on the record, we do not

---

**3.** In pertinent part, 5 C.F.R. § 1201.154 provides:

> Following are the requirements for filing a petition raising issues of prohibited discrimination:
> (a) Where the appellant has filed a timely formal complaint of discrimination with the agency:
> (1) A petition must be filed within 20 days after receipt of the agency resolution or final decision on the discrimination issue; or

> (2) When the agency has not resolved the matter or issued a final decision on the formal complaint within a 120-day period, the appellant shall nonetheless file an appeal to the Board within a year after the filing of the formal complaint with the agency.

**4.** See n. 1, supra.

believe that the district court erred in its finding.

 In order to establish a prima facie case of a retaliatory discharge, a plaintiff must establish (1) statutorily protected expression, (2) an adverse employment action, and (3) a casual link between the protected expression and the adverse claim. *Lindsey v. Mississippi Research and Development Center,* 652 F.2d 488, 491 (5th Cir. Aug. 3, 1981). The appellant argues, correctly, that the trial court erred by applying the standards of *Sorrells v. Veterans Administration,* 576 F.Supp. 1254, 1262 (S.D.Ohio 1983), when analyzing the appellant's civil rights claims. The court in *Sorrells* established the following criteria which a plaintiff must establish before making out a prima facie case of retaliatory discharge: (1) that the plaintiff was engaged in a protected activity; (2) that the employer knew of this protected activity; (3) that the plaintiff was subsequently discharged or subject to other damages; and, (4) that the employer had a retaliatory motive or that the timing of its actions was such as to allow an inference of retaliation to arise. This error, however, does not call for a reversal of the trial court's judgment.

While it is apparent that the words used to describe the final requirement under *Lindsey* and *Sorrells* are different, it is far from clear that the result would have been different had the *Lindsey* standard been applied to the facts of this case. Both requirements go toward establishing a causative link between the protected action and the injury or damage to the claimant. *Lindsey* describes this generally as "a causal link" whereas *Sorrells* describes the kinds of causal links, specifically "motive" or "timing." Significantly, to the extent *Sorrells* allows the "inference of retaliation" to satisfy the causation requirement, it is easier for a claimant to meet the standard. Thus, if anything, the trial court gave the appellant the benefit of the more liberal rule, rather than requiring strict proof of causation.

 The trial court noted in its opinion that even if the appellant had established a

prima facie case, it felt that the Army had articulated legitimate, nondiscriminatory reasons for its actions. Once a prima facie case of discrimination has been established, the burden shifts to the defendant to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected or, in this case, terminated for a legitimate, nondiscriminatory reason. However, the defendant need not persuade the trial judge that it was actually motivated by the proffered reason. It is sufficient that the defendant's admissible evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Joshi v. Florida State University Health Center,* 763 F.2d 1227 (11th Cir.1985). In this case, the observations of the trial judge, although obiter dictum, are not clearly erroneous.

The appellant further contends that the trial court erred in not stating in its opinion the reasons for rejecting his evidence of discrimination. However, this Court disagrees with the premise of the appellant's argument. We are of the opinion that the trial judge's findings of fact were "clear, specific, and complete, without nonrealistic and uninformative generality on the one hand, and on the other without an unnecessary and unhelpful recital of nonessential details of evidence." 9 Wright & Miller, Federal Practice and Procedure § 2579, at 711 (1971). Clearly, in light of the appellant's circumstantial evidence of discrimination, the findings of fact of the trial judge were sufficiently detailed to give this Court a clear understanding of the analytical process by which these findings were reached and to assure this Court that the trial judge took care in ascertaining the facts. *Cf. Golf City, Inc. v. Wilson Sporting Goods Co., Inc.,* 555 F.2d 426, 432–36 (5th Cir.1977) (trial judge's findings of fact were inadequate to give reviewing court a clear understanding of trial judge's analytical process in an antitrust case); *Lee v. Russell County Board of Education,* 684 F.2d 769, 773–76 (11th Cir.1982) (trial

judge's findings of fact were inadequate in light of plaintiff's direct, highly probative evidence of discrimination); *Nash*, 763 F.2d at 1397–1398 (trial judge's findings of fact were inadequate to explain the trial judge's analytical process because in an "disparate impact" case under Title VII an employer bears a burden of "persuasion" of "business necessity" rather than mere "articulation" of legitimate, non-discriminatory reasons for its action).

### B. *Civil Service Claims*

■ The appellant contends that the trial court erred in its dismissal of his civil service claims brought pursuant to the Civil Service Reform Act of 1978, 5 U.S.C. § 7701, *et seq.* The trial judge dismissed these claims because the appellant failed to exhaust his administrative remedies. The appellant argues that the district court had jurisdiction over his mixed case complaint under the plain language of 5 U.S.C. § 7702. We agree.

The doctrine of administrative exhaustion should be applied with a regard to the particular administrative scheme at issue. *Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Parisi v. Davidson*, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17 (1972); *McKart v. United States*, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969). In this instance, the administrative/judicial procedures created by Congress in the Civil Service Reform Act consist of a number of interlocking and somewhat overlapping relationships between various federal agencies and federal courts.

The Civil Service Reform Act of 1978 generally provides that final decisions of the MSPB are reviewable in either the courts of appeals or the Court of Claims. 5 U.S.C. § 7703(b)(1). In such cases, the court may set aside an agency action only if arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, procedurally infirm, or unsupported by substantial evidence. *Id.* § 7703(c). The Act, however, creates an exception for "[c]ases of discrimination." *Id.* § 7703(b)(2). Such cases include those in which the employee "alleges that a basis for the action was discrimination prohibited by ... section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16) ..." *Id.* § 7702(a)(1)(B). They are to "be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16(c)) ... as applicable ...," *Id.* § 7703(b)(2) and are reviewable de novo by the district court. *Id.* § 7703(c). *See Chandler v. Roudebush*, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976).

Read together with the rest of the Act, these sections provide two different types of procedures for employees contesting agency action. If an employee does not allege that "a basis" of the agency action was discrimination, he may appeal an agency decision directly to the MSPB and from the MSPB to the courts of appeals or the Court of Claims. If, however, the employee does allege discrimination, he may *either* immediately file suit in a district court *or* pursue an administrative procedure.[5] *Hayes v. United States Government Printing Office*, 684 F.2d 137, 139 (D.C.Cir. 1982). *See Christo v. Merit Systems Protection Board*, 667 F.2d 882, 884 (10th Cir.

---

**5.** The administrative route consists of an MSPB hearing and decision on the mixed case complaint, followed by a choice between judicial review at that point or review of the discrimination claim before the Equal Employment Opportunity Commission. 5 U.S.C. § 7702(a)(3). If the EEOC agrees to review the MSPB's decision, it may concur in it or, upon the finding of particular errors, issue a different decision. *Id.* § 7702(b)(3). The MSPB may then concur in the EEOC's decision or reaffirm its initial decision. *Id.* § 7702(c). If the two agencies are unable to agree, the matter is certified to a special panel for a final administrative determination. *Id.* § 7702(d).

If the employee has elected the administrative route and has pursued his claim before the EEOC, he may seek review de novo in the district court 180 days after he files the petition before the EEOC, or when there is a final agency action on the matter. 5 U.S.C. § 7702(e). See H.R.Rep. No. 1717, 95th Cong.2d Sess. 141 (1978) (Conference report), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2873–74. *Hayes*, 684 F.2d at 139.

1982); *Williams v. Department of Army,* 715 F.2d 1485, 1489 (Fed.Cir.1983). If an agency (i.e., not the MSPB) *or* the MSPB does not render a decision on an employee's mixed case complaint within 120 days, the employee is entitled "to file a civil action to the same extent and in the same manner as provided in § 717(c) of the Civil Rights Act of 1964...." 5 U.S.C. § 7702(e)(1). An employee's right to file a civil action on the agency's decision, or lack thereof within 120 days, is circumscribed only if the employee files an appeal with the MSPB. *See Id.* §§ 7702(e)(1)(A) and (B), 7702(e)(2) and 7702(a)(2)(B). Therefore, Congress, through this section, has explicitly given the employee certain rights and options, one of which is to file a civil action based on his mixed case complaint before resorting to the MSPB.

We are also of the opinion that the trial judge erred by bifurcating the appellant's nondiscrimination claims from his discrimination claims. Several court of appeals have considered the issue of bifurcation in the context of whether bifurcation of an appeal from an MSPB decision in a mixed case complaint between the district court and the court of appeals is either permissible or required. Each of these courts has concluded that, in light of the language and legislative history of the Civil Services Reform Act, mixed cases must be treated as a unit.[6]

In *Wiggins,* the court approached the problem by determining the scope of the jurisdiction of a district court in a mixed case complaint:

> Our analysis begins with the language of the statute. Section 7702 is not limited to individual *claims* of discrimination, but is instead extended to any *"case* of any employee ... who alleges that a *basis* for the action was discrimination...." 5 U.S.C. § 7702(a)(1) (emphasis added). This language echoes descriptions found in the legislative history

of the Act. The Senate Report, for example, refers to the district courts' jurisdiction over decisions and orders of the board "involving discrimination complaints." S.Rep. No. 95–969, [95th Cong., 2nd Sess. 63 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 2723, 2785]. Thus, both the statute and its legislative history define jurisdiction in terms of "cases" which "involve discrimination," and not in terms of "discrimination claims;" this suggests that the Congress intended district court jurisdiction to extend to *all* claims in any case involving a charge of discrimination.

> Indeed, this interpretation is consistent with the statute's treatment of mixed cases in previous stages of the process: section 7702 explicitly requires the [MSPB] in appealable cases alleging both discrimination and non-discrimination claims to decide *both* issues. 5 U.S.C. § 7702(a)(1)(B).

*Wiggins,* 653 F.2d at 221–22.

Elaborating on the *Wiggins* analysis, the court in *Williams* stated:

> A reading of § 7702 confirms this conclusion. Throughout § 7702, the issues of a mixed case are tied together for resolution at the same time. Section 7702(a)(2) requires an "agency" (i.e., not the MSPB) to decide "both the issue of discrimination and the appealable action" within 120 days and "the decision" is judicially reviewable or appealable to the board. Similarly, § 7702(a)(1)(B) requires the Board (i.e., the MSPB) also to decide all issues in the case within 120 days. Moreover, throughout § 7702, the word "decision" is used in referring to the administrative result of the proceeding in a mixed case, and the words "judicially reviewable *action,"* again in the singular, is used concerning the review which may follow from *the* decision, whether the decision be that of an agency, the

---

6. *Wiggins v. United Postal Service,* 653 F.2d 219 (5th Cir.1981); *Williams,* 715 F.2d 1485; *Chang v. Merit Systems Protection Board,* 677 F.2d 173 (1st Cir.1982); *Christo,* 667 F.2d 882; *Wermer's v. Merit Systems Protection Board,* No. 80–7675 (9th Cir.1981); *Von Minden v. Nuwes,* No. 80–7764 (9th Cir.1981), cert. denied, 454 U.S. 1032, 102 S.Ct. 569, 70 L.Ed.2d 475 (1981); *Hayes,* 684 F.2d 137.

Board, the Equal Employment Opportunity Commission, or a special panel to which a matter may be certified. Having used "issue of discrimination" in § 7702(a)(1)(B) and again in § 7702(a)(2)(B), if that issue were to be severable from the rest of the case for purposes of judicial review, Congress could have easily provided for a decision on that "issue" to be the subject of a "judicially reviewable action." Congress did not so provide, and we find no sound reason to interpret "a decision" to mean "decisions" or to read "action" as "action and appeal."

*Williams,* 715 F.2d at 1489.

Though the *Wiggins* court was presented with a case involving an appeal from an MSPB decision, the reasoning of the court is equally applicable to this case. We see no reason to believe that Congress either directed or even contemplated bifurcated review on any mixed case between the MSPB and the district courts. *Williams,* 715 F.2d at 1490. *Contra Dearsman v. Kurtz,* 516 F.Supp. 1255 (D.D.C.1981). Rather, section 7702 reflects statements in the legislative history:

> In such cases, questions of the employee's inefficiency or misconduct, and dis-

crimination by the employer, will be two sides of the same question and must be considered together.

S.Rep. No. 95–969, *supra,* at 53, U.S.Code Cong. & Admin.News 1978, p. 2775.[7]

This analysis buttresses our view that the entire mixed case complaint was properly before the district court below. It does not disturb our view about the trial court's ruling regarding the appellant's Title VII claims. To reiterate, we feel that the appellant's entire mixed case complaint was properly filed before the district court judge. The district court judge has, thus far, ruled on the appellant's claims of discrimination. We affirm that portion of the trial court's opinion. However, we feel that the trial judge improperly declined to rule on the appellant's civil service claims. Accordingly, we remand the cause to the trial judge for consideration of these issues.

### III.

#### *Conclusion*

The judgment below is AFFIRMED in part, REVERSED in part and the cause is

---

7. See also H.R.Conf.Rep. No. 95–1717 which provides in part:

There are in all eight different times when the employee may have the right to bring suit in Federal district court. They are as follows:
1. *120 days after filing a complaint with the employing agency even if the agency has not issued a final decision by that time.*
2. 30 days after the employing agency's initial decision.
3. 120 days after filing a petition with the MSPB if the MSPB has not yet made a decision.
4. 30 days after an MSPB decision. If the employee petitions EEOC to review the matter and EEOC denies the petition, the 30-day period in this case runs from the denial of such a petition by EEOC.
5. 30 days after the EEOC decision, if EEOC agrees with the MSPB.
6. 30 days after MSPB reconsideration if MSPB agrees with the EEOC.
7. 30 days after the special panel makes a decision.
8. 180 days after filing a petition with the EEOC for reconsideration of an MSPB decision, if a final agency decision by EEOC,

MSPB, or the Panel has not been reached by that time.
If a suit is brought in district court, the rules of equity provide that minor procedural irregularities in the administrative process for which the employee is responsible should not predetermine the outcome of the case.
H.R.Conf.Rep. No. 95–1717, 95th Cong.2d Sess. 141–42 reprinted in 1978 U.S.Code Cong. & Ad. News 2860, 2875 (emphasis added).
Additional language which manifests that Congress clearly recognized that bifurcated treatment at that level was undesirable is found in the following Congressional report:

Any provision denying the Board jurisdiction to decide certain adverse action appeals because discrimination is raised as an issue would make it impossible for the government to have a single unified personnel policy which took into account the requirements of all the various laws and goals governing Federal personnel management. In the absence of full Board jurisdiction, forum shopping and inconsistent decisions, perhaps arising out of the same set of facts, would result.
S.Rep. No. 95–969, *supra,* at 53, U.S.Code Cong. & Admin.News 1978, p. 2775.

REMANDED for further proceedings in accordance with this opinion.