[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-11367

Non-Argument Calendar

_____

JOHN ELTON PIPER,

Plaintiff-Appellant,

*versus*

SECRETARY OF THE NAVY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:19-cv-00570-TKW-MJF

_____

Before JILL PRYOR, ANDERSON, and HULL, Circuit Judges.

PER CURIAM:

John Elton Piper, a civilian employee of the Navy, was placed on a Formal Performance Plan ("FPP") and later terminated for unacceptable performance. Piper unsuccessfully pursued an administrative complaint with the Navy's Equal Employment Opportunity ("EEO") Office. In addition, Piper, proceeding pro se, sued the Navy in federal court for (1) a violation of the Civil Service Reform Act of 1978 ("CSRA"), (2) age discrimination, and (3) retaliation. The district court granted summary judgment to the Navy on all three claims. On appeal, Piper contends the district court erred only as to his CSRA claim. After careful review, we affirm the district court's order.

## I.    FACTS

The following undisputed facts are drawn from the evidence in the summary judgment record.

On April 11, 1999, the Navy hired Piper as a scientist at the Naval Surface Warfare Center in the Panama City Division. That office operates under the Naval Sea Systems Command, which is responsible for (1) procuring, engineering, building, and sustaining ships, submarines, and related combat systems; and (2) providing research, development, testing, evaluation, and life cycle sustainment support within its mission areas.

## A.    The Sonar Beamformer Project

In fiscal year 2013, the Navy commenced a research project called the Continuous Transmission Frequency Modulated Synthetic Aperture Sonar Project (the "sonar beamformer project"). The goal of that project was to write a technical report and program on a long-range sonar beamformer. The initial deadline for the project was September 2014.

The Navy assigned a principal investigator to the sonar beamformer project. That person was responsible for being the primary contributor and project lead. In March 2014, Piper became the principal investigator.

Because of the change in personnel and a report that the project was "promising," department leadership gave Piper an extension to September 2015 to complete the sonar beamformer project. In September 2015, however, Piper had not finished the project. So Piper asked for another extension, which department leadership granted. The project's new deadline was January 2016. Piper did not complete the project by the new deadline.

In March 2016, during his midyear project review, Piper reported that the sonar beamformer project was (1) behind schedule, (2) out of money and (3) overdue.

## B.    Piper's FPP

In September 2016, months after the new January 2016 deadline, Piper submitted the sonar beamformer project for final

review and approval.[1]    Frank Crosby (Piper's second-level supervisor) did not sign Piper's technical report because Crosby (1) thought Piper's writing style was unprofessional and (2) found Piper's statement—that internet search engine results constituted proof of scientific validity—to be unprofessional as well.

On January 6, 2017, Crosby placed Piper on a FPP to resolve Piper's performance deficiencies.  To demonstrate he was able to perform at an acceptable level, the FPP tasked Piper with completing two other assignments within sixty days.  In the introduction section, the FPP reviewed the history of Piper's sonar beamformer project as follows:

> *Beginning in FY-13, you were tasked with work on the Long Range Synthetic Aperture Sonar project.*  The goals of the project were to write a technical report and program a long range sonar beamformer.  However, during periodic task reviews, you reported the project was behind schedule.  The project was scheduled to end at the end of FY-15.  The task deadline was extended to give you more time to complete the work; nonetheless, during the FY-16 mid-year task review, you reported that while you had made progress on the task; *you had failed to complete the task as assigned.*  Your performance as such, is troubling and has impacted the mission of the

---

[1] The Navy contends that Piper submitted the project for final review and approval in November 2016, but we use Piper's more favorable date of September 2016.

Command.  This formal PP is designed to help you resolve your performance deficiencies and demonstrate you are able to perform at the Acceptable Level.

(Emphases added.)  As explained later, Piper's appeal focuses on the two italicized statements in the FPP's introductory section.

However, the FPP actually tasked Piper with (1) demonstrating he had "the basic knowledge requirements of the position," as described in the enclosures attached to the FPP, (2) "produc[ing] a program that can be used to remove noise in three-dimensional images" and (3) "maintain[ing] a work log/diary (using MS-Word) of [his] daily work activities" that he was to email to Crosby before their weekly meetings.

The FPP warned that if Piper's performance was deemed unacceptable, Crosby would propose a personnel action of (1) removal from federal service, (2) demotion with a reduction in pay, (3) demotion without a reduction in pay, or (4) reduction in pay while remaining in the same band level.

On March 7, 2017, the FPP ended.  Crosby found Piper's performance on the two new assignments to be unacceptable and provided a summary and evaluation of the FPP outcome to Piper.

## C.    Piper's Termination for Unacceptable Performance

On March 31, 2017, Crosby issued a Notice of Proposed Removal for Unacceptable Performance ("Notice").  The Notice placed Piper on administrative leave and proposed Piper's removal

6                      Opinion of the Court                    22-11367

"based on [his] Unacceptable Performance during a [FPP] conducted during the period of 6 January 2017 to 7 March 2017." In the Notice's background section, Crosby acknowledged that Piper "took over" the project in 2014 after a change in personnel. Also in the Notice, Crosby cited eight examples of Piper's unacceptable performance on the FPP, such as Piper's failure to stay focused on the assigned tasks and failure to follow the style guide that was provided to him.

On May 2, 2017, Kerry Commander (Piper's third-level supervisor) sustained Piper's termination. Commander cited the Notice and Piper's performance on the two assignments in the FPP for his decision to terminate Piper. Piper's termination took effect the next day on May 3, 2017.

## II.    PROCEDURAL HISTORY

### A.    Administrative Proceedings

Before his termination, Piper started administrative proceedings, challenging his placement on the FPP. Specifically, on January 13, 2017, Piper sought informal counseling from the Navy's EEO Office, alleging that Crosby placed him on the FPP because of his age and in retaliation for his earlier EEO complaint in 2015.[2]    Later, on March 10, 2017, Piper submitted a formal

---

[2] Piper's earlier EEO complaint arose when he was not selected for a "high grade position." In October 2015, Piper filed a formal complaint with the Navy's EEO Office, alleging that he was discriminated against on the basis of

22-11367                Opinion of the Court                7

complaint about the FPP to the Navy's EEO Office.  *See* 29 C.F.R. § 1614.106.

Then, after the Navy terminated Piper in May 2017, Piper amended his discrimination claim to include an allegation that the Navy *fired* him in retaliation for his 2015 EEO complaint.  Piper also requested a hearing.  *See* 29 C.F.R. § 1614.109.

On September 11, 2019, an administrative law judge ("ALJ") with the Equal Employment Opportunity Commission ("EEOC") granted the Navy's motion to dismiss in part and concluded she "lack[ed] jurisdiction over [Piper's] termination because [Piper] was a non-probationary employee whose termination is under the jurisdiction of the Merit Systems Protections Board."  So the ALJ remanded only the termination claim to the Navy's EEO Office for further processing as a mixed case complaint.

On May 3, 2020, the Navy's EEO Office issued its final agency decision, which concluded that the Navy had not "discriminate[d] against [Piper] based on reprisal."  *See* 29 C.F.R. § 1614.302(d)(3).[3]

_____

his age.  In October 2016, the Navy's EEO Office found Piper had not suffered age discrimination.

[3] As background to the lawsuit, "[a] mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, or genetic information related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)."  29 C.F.R. § 1614.302(a)(1); *see also Kloeckner v. Solis*, 568 U.S. 41, 44, 133 S. Ct. 596, 601 (2012).  An appealable agency action

## B.    District Court Proceedings

In January 2020, Piper, proceeding pro se, filed this action against the Navy in the district court. Piper's amended complaint alleged his termination (1) violated the CSRA, 5 U.S.C. § 4303(a), (2) was age discrimination in violation of the Age Discrimination in Employment Act, and (3) was in retaliation for his earlier EEO complaint.

Following discovery, the parties filed cross motions for summary judgment. The Navy sought summary judgment on Piper's age discrimination and retaliation claims. Piper moved for

---

includes a removal. 5 U.S.C. § 7512(1); *Kloeckner*, 568 U.S. at 44 n.1, 133 S. Ct. at 600 n.1. Piper has a mixed case because his formal complaint alleged his termination was because of age discrimination and retaliation.

"[T]he CSRA provides diverse procedural routes for an employee's pursuit of a mixed case." *Perry v. Merit Sys. Prot. Bd.*, __ U.S. __, 137 S. Ct. 1975, 1980 (2017). An employee with a mixed case "may *either* immediately file suit in a district court *or* pursue an administrative procedure." *Doyal v. Marsh*, 777 F.2d 1526, 1535 (11th Cir. 1985); 5 U.S.C. § 7702(a)(2). Those administrative procedures are varied and include filing with either (1) the agency or (2) the MSPB. 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *Kloeckner*, 568 U.S. at 44–45; 133 S. Ct. at 601.

Here, Piper first pursued an administrative procedure by filing his complaint with the Navy's EEO Office in March 2017. *See* 5 C.F.R. § 1201.154(a); 29 C.F.R. § 1614.302(b); *Kloeckner*, 568 U.S. at 45, 133 S. Ct. at 601. Because more than 120 days passed with no final agency decision, the regulations permitted Piper to bypass further administrative review and take the matter to the district court. *See* 29 C.F.R. §§ 1614.302(d)(1)(i), 1614.310(g); *Kloeckner*, 568 U.S. at 45, 133 S. Ct. at 601.

partial summary judgment on his CSRA claim.  As pertinent here, Piper argued that no genuine issue of material fact existed as to his CSRA claim because "the Navy's removal of [him] was based on false statements and was unjustified."

The magistrate judge issued a report and recommendation ("R&R").  The R&R recommended that the district court (1) grant the Navy's motion for summary judgment on Piper's age discrimination and retaliation claims, (2) deny Piper's motion for partial summary judgment on his CSRA claim, and (3) grant summary judgment to the Navy on Piper's CSRA claim after giving Piper an opportunity to be heard on his objections to the R&R.

On the CSRA claim, the R&R construed Piper's amended complaint to contain a claim that two of Crosby's statements in the FPP were false and therefore his termination was the result of "harmful error in the application of the agency's procedures" in violation of the CSRA.  The two alleged false statements were (1) "Beginning in FY-13, [Piper] was tasked to work on the . . . project" and (2) Piper "failed to complete the task as assigned."  The magistrate judge concluded that (1) the error in the first statement—i.e., the reference to FY-13 as opposed to FY-14—was harmless because it was irrelevant to the Navy's decision to remove Piper and it was later cured in the Notice which indicated Piper "took over" the project in 2014 after a change in personnel and (2) the second statement was not false.

Piper objected to the magistrate judge's R&R.  Again, Piper stressed Crosby's two statements in the FPP (identified above) were false.

The district court overruled Piper's objections and adopted the magistrate judge's R&R.  The district court entered summary judgment for the Navy.  Piper timely appealed but only as to his CSRA claim.[4]

## III.    STANDARD OF REVIEW

Ordinarily, we review de novo a district court's order of summary judgment and, like the district court, draw all inferences in the light most favorable to the non-moving party, recognizing that summary judgment is appropriate only when there are no genuine issues of material fact. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).  The parties agree that this standard of review governs Piper's CSRA claim.

Documents filed by pro se litigants are liberally construed and are held to less stringent standards than documents drafted by attorneys.  *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).

---

[4] On appeal, Piper's brief explicitly states that he does not challenge the district court's grant of summary judgment to the Navy on his age discrimination and retaliation claims.  Therefore, any issues on those claims are abandoned. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680–81 (11th Cir. 2014).

## IV.    DISCUSSION

The CSRA established the procedure by which a federal employee may seek protection for adverse personnel actions. *Kloeckner*, 568 U.S. at 44, 133 S. Ct. at 600.  When an agency seeks to remove an employee for unacceptable performance, as was done here, the employee is entitled, in relevant part, to 30 days' advance written notice of the proposed action.    5 U.S.C. § 4303(b)(1)(A).    That written notice must identify "specific instances of unacceptable performance by the employee on which the proposed action is based."  *Id.* § 4303(b)(1)(A)(i).[5]

On appeal, Piper argues that two of the "specific instances of unacceptable performance" listed by Crosby in the FPP are factually inaccurate and amount to harmful error.  The two statements in the FPP are: (1) "Beginning in FY-13, [Piper] w[as] tasked with work on the . . . project"; and (2) Piper "failed to complete the task as assigned."

The problem for Piper is the Notice, not the FPP, controls his removal.  The Notice—not the FPP—is the 30-day written notice in which the Navy must properly provide "specific instances

---

[5] The Navy argues that the Office of Personnel Management ("OPM") waived the requirement in § 4303(b)(1)(A)(i) that an agency identify the "specific instances of unacceptable performance" when removing an employee.  We disagree.  The OPM waived only two portions of § 4303, neither of which involve § 4303(b)(1)(A)(i)'s requirement when removing an employee.  *See* 62 Fed. Reg. 64066 (Dec. 3, 1997).

of unacceptable performance" to support the proposed removal of Piper. *Id.*

The Notice, dated March 31, 2017, complied with § 4303(b)(1)(A)(i) by listing eight specific instances of Piper's unacceptable performance during the FPP period, including (1) two incidents in which Piper failed to focus on the assigned tasks in the FPP's first assignment and (2) six incidents in which Piper committed errors in the code he was asked to program or otherwise failed to complete a task for the FPP's second assignment.

Importantly, the Notice does not contain either of the statements found in the FPP that Piper claims are false. Thus, there is no merit to his argument that these two false statements were the basis for his removal.

Piper raises only one issue as to any of these eight specifically identified instances of unacceptable performance. Piper claims that sixty days to complete the two assignments in the FPP was "unreasonable and unjust" because, according to the Navy's response to an interrogatory, it took three mathematicians 1.5 years to complete those tasks. But the interrogatory response Piper cites says it took three mathematicians 1.5 years to write "Total Variation Methods for Three Dimensional Lidar Image Denoising." The FPP did not task Piper with writing that publication. Instead, the FPP tasked Piper with, in relevant part, "[w]rit[ing] a program that implements the algorithms described in

3d_tv.PDF [(i.e., the publication)], which is provided with this plan."

Indeed, a copy of the publication was attached to the FPP. The FPP did not require Piper to "reproduce and extend" the publication's results, as Piper contends, but merely to use the algorithms it described. So, contrary to Piper's argument, the Navy's response to the interrogatory does not show that the sixty-day timeline in the FPP was unreasonable.

For these reasons, the Navy complied with the requirements of § 4303(a) and (b)(1)(A)(i) in removing Piper, and the district court properly found that there was no genuine issue of material fact as to the CSRA claim.

But even assuming the FPP was pertinent to the CSRA claim, we agree with the district court that Piper failed to show that the two statements amounted to harmful error. To establish harmful error sufficient to reverse an agency's personnel action, an employee must show that error caused substantial harm or prejudice to his or her rights. 5 C.F.R. § 1201.4(r). A harmful error is an "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error." *Id.*

Importantly, while Piper was placed on the FPP because of his performance deficiencies while working on the sonar beamformer project, he was *not* removed because of that. Rather,

Piper was removed because of his performance deficiencies while working on the two new assignments in the FPP.

At any rate, it is not likely that either statement "caused the [Navy] to reach a conclusion different from the one it would have reached in the absence or cure of the error." *See id.*

As to the first statement—i.e., "Beginning in FY-13, [Piper] w[as] tasked with work on the . . . project"—the Navy does not dispute that it is false. The parties agree that Piper started working on the project in fiscal year 2014, not 2013. However, the record also shows that, regardless of when Piper started the sonar beamformer project, Crosby was dissatisfied with Piper's work for many reasons: (1) Piper asked for several extensions, (2) Piper reported that the project was behind schedule, out of money, and overdue, (3) Piper did not submit the technical report for review until September 2016 (months after his January 2016 deadline), and (4) Crosby thought Piper's report was unprofessional.

As for the second statement—i.e., Piper "failed to complete the task as assigned"—Piper contends it is false because he finished the sonar beamformer project when he submitted the technical report. But the statement in the FPP was that Piper "failed to complete the task *as assigned.*" (Emphasis added.) It is undisputed that Piper did not complete the task "as assigned" by the Navy: (1) Piper asked for many extensions; (2) during his midyear project review in fiscal year 2016, Piper reported that the project was behind schedule, out of money, and overdue; and (3) Piper did not submit the technical report for review until September 2016

(months after his January 2016 deadline). Accordingly, the second statement is not false.[6]

For these reasons, the district court did not err in finding there was no genuine issue of material fact as to whether the Navy properly terminated Piper's employment under the CSRA.[7]

**AFFIRMED.**

---

[6] Piper implies that he completed the project "as assigned" because the original proposal for the project estimated that the project would take 3 years (not 2 years) and he completed the project in 2.5 years. Piper also stresses that the project was funded through the end of fiscal year 2016. But neither of these points changes the fact that January 2016 was the last deadline Piper was given to submit the project, and Piper did not do so until September 2016.

[7] The Navy argues Piper failed to raise his CSRA claim at the EEO level and therefore failed to exhaust his administrative remedies on that claim. We need not decide that exhaustion issue because the district court's grant of summary judgment to the Navy on Piper's CSRA claim is affirmed here in any event. However, we note that Piper's March 2017 EEO complaint challenged the truthfulness of the two statements in the FPP, which is the basis for Piper's CSRA claim.