[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 99-14735

_____

D. C. Docket No. 97-01897-CV-BU-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 29, 2000
THOMAS K. KAHN
CLERK

ROBERT MULLINS, MICHAEL D. DESRUISSEAUX, et al.,

Plaintiffs-Appellants,

versus

CRAVEN CROWELL, JOHNNY H. HAYES, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(September 29, 2000)**

Before COX and HULL, Circuit Judges, and GEORGE[*], District Judge.

COX, Circuit Judge:

This is a disability discrimination suit brought under the Rehabilitation Act, 29 U.S.C. § 701

et seq. (the Act). Twenty-four plaintiffs,[1] appellants here, filed complaints against their former

_____

[*]     Honorable Lloyd D. George, U. S. District Judge for the District of Nevada,
sitting by designation.

[1]     The individual plaintiffs are:
        Thomas Larry Bailey, Jerry Chandler, Lonner T. Chandler, Ricky S. Coats,
        Thomas A. Crow, Michael D. Desruisseaux, Richard B. Dutton, Jerry Gothard,
        Noonan W. Greene, Barbara G. Hovater, Timothy L. Mansell, Bobby Massey,
        Thomas H. Miles, Robert Mullins, Michael G. Murks, Halbert Putnam, Marion G.

employer, the Tennessee Valley Authority (the TVA). After consolidating the cases, the district court granted summary judgment in favor of the TVA. We affirm in part and reverse and remand in part.

I. *Facts and Procedural History*

The plaintiffs, except Hovater,[2] were designated "craft employees" (carpenters, painters, ironworkers, machinists, laborers, pipefitters, etc.) of the TVA. The plaintiffs were injured while working for the TVA, and, as a result, were permanently medically restricted and unable to return to work at their former jobs.[3] Each plaintiff applied for and received full benefits under the Federal Employees' Compensation Act (the FECA) from the Department of Labor's Office of Workers' Compensation Programs (the OWCP). The TVA ultimately bore the cost of these benefits through chargebacks.

The plaintiffs were all reemployed by the TVA in special positions after they started receiving FECA benefits and were told that if they refused to accept the positions, their benefits would be terminated. Most were also told that if their positions were eliminated, their full FECA benefits would be restored. The positions were awarded pursuant to reemployment programs,

———————

Rainer, Millard Shelton, Marc W. Shores, Edward J. Smart, Lanny W. Smith, Frank N. Speer, Troy Tucker, and James R. Williams.

[2]    Hovater was a "clerk word processor."

[3]    Hovater was apparently the only exception, as she returned to work as a clerk word processor, but was then discharged and reemployed again before being terminated during a reduction in force (RIF), allegedly because she was disabled.

2

including the Reemployment Initiative Instruction (REIN)[4] and the Reentry[5] Programs, that allowed TVA to avoid OWCP chargebacks.

The TVA placed the employees who were reemployed in these special positions into separate seniority/ retention levels that were composed of only disabled employees. Then, during the TVA's reductions-in-force (RIFs) of 1996 and 1997, the jobs in these seniority/ retention levels were eliminated and the plaintiffs were terminated. At that time, pursuant to a new OWCP policy, with only a few exceptions,[6] the plaintiffs' full FECA benefits were not restored.

After pursuing administrative remedies with the TVA,[7] the plaintiffs filed suit, arguing that the TVA[8] violated §§ 501 and 504 of the Act[9] by directly discriminating against them on the basis

---

[4]	Plaintiffs Bailey, L. Chandler, Coats, Crow, Desruisseaux, Dutton, Greene, Mansell, Massey, Miles, Mullins, Rainer, Shores, Speer, Smart, Smith, and Williams were reemployed under the REIN Program.

[5]	Plaintiffs J. Chandler, Murks, Shelton, and Tucker were reemployed under the Reentry Program. Plaintiffs Gothard and Putnam were reemployed as Materials Clerk-Stores, SB-3, at the TVA's Widows Creek facility in 1989, before the TVA established the REIN and Reentry Programs, and plaintiff Hovater was reemployed, but not as part of an established reemployment program, as a clerk word processor at the TVA's Muscle Shoals facility.

[6]	According to the district court, Bailey, Coats, and Tucker received full restoration of FECA benefits following the RIFs; whether J. Chandler and Mullins received full restoration of FECA benefits is unclear; and the rest of the plaintiffs did not receive full restoration of FECA benefits.

[7]	Richard B. Dutton is the only plaintiff who did not file an administrative complaint. The district court, however, apparently allowed him to "piggyback" his claim into L. Chandler's lawsuit. The TVA has not argued on appeal that this piggybacking was improper.

[8]	The TVA is sued in the names of Craven Crowell, the Chairman of the TVA; and Johnny H. Hayes and William H. Kennoy, both members of the TVA's Board of Directors. *See* 42 U.S.C. § 2000e-16(c) (designating that, for cases against the federal government as an employer, the "head of the department, agency, or unit, as appropriate, shall be the defendant.").

[9]	Sections 501 and 504 of the Act are codified at 29 U.S.C. §§ 791 and 794, respectively.

of their disabilities[10] and indirectly discriminating against them by using policies and procedures that had a disparate impact on disabled employees. The plaintiffs claimed that the TVA set up a closed seniority system that impaired their ability to compete for retention in the face of impending RIFs and that the TVA then riffed each disabled employee. They also claimed that in their reemployment positions, they were not given meaningful work and were denied opportunities for training and advancement. Finally, the plaintiffs contended that the TVA offered them jobs and then riffed them, on the basis of their disabilities, to avoid the rising costs of chargebacks to the OWCP.

The district court granted the TVA's motion for summary judgment on several alternative grounds. First, the district court concluded that the plaintiffs had failed to exhaust their administrative remedies for their separate-classification claims because they did not object or seek counseling within 45 days after they were reemployed and classified, as required by the district court's interpretation of *Lorance v. AT & T Techs., Inc.*, 490 U.S. 900, 906, 109 S. Ct. 2261, 2266 (1989). Second, addressing the substantive claims of individual disparate treatment, the district court concluded, based on its interpretation of *Sutton v. United Airlines*, 527 U.S. 471, ___, 119 S. Ct. 2139, 2151 (1999), that working was not a "major life activity" within the meaning of the Act and that, therefore, the plaintiffs were not disabled within the meaning of the Act. Third, the district court listed alternative grounds for granting summary judgment against 20 of the plaintiffs, concluding that each was not "disabled" under the Act because he had not shown that he was substantially limited in working in a broad class of jobs in the relevant geographic area. Finally, the district court also concluded that the plaintiffs had failed to demonstrate that the TVA's proferred

---

[10]  The plaintiffs argued that they were disabled within the meaning of the Act, and that they had a record of a disability or were regarded as having a disability by TVA.

explanation that the plaintiffs were riffed for budgetary reasons (to save on chargebacks from FECA), was a pretext for disability discrimination.

The plaintiffs appeal the district court's grant of summary judgment to the TVA on their § 501 disparate-treatment claims based on their separate, disability-based classifications for seniority and RIF purposes.

## II. *Issues on Appeal*

A. Whether the plaintiffs exhausted their administrative remedies.

B. Whether the district court erred by granting summary judgment based on its conclusion that "working" is not a "major life activity" within the meaning of the Act.

C. Whether the district court properly granted summary judgment on other grounds particular to each plaintiff.[11]

## III. *Discussion*

## A. *Exhaustion*

The TVA argues that the plaintiffs' claims are barred because the plaintiffs failed, in three ways, to exhaust their administrative remedies. First, the TVA contends that the district court correctly dismissed the plaintiffs' discriminatory-classification claims because the plaintiffs failed to complain within 45 days after they first were placed in their respective seniority classifications. *See Lorance v. AT & T Tech., Inc.*, 490 U.S. 900, 109 S. Ct. 2261 (1989). Second, according to the TVA, because the plaintiffs failed to raise their classification claims during the investigation of their

---

[11] The plaintiffs also argue that the district court abused its discretion by refusing to permit them to amend their complaints to add other "major life activities" in which they claimed to be substantially limited. We conclude that, given the late date of the attempted amendments, the district court did not abuse its discretion by denying the plaintiffs leave to amend.

administrative complaints regarding the RIF, these claims are not properly before the court. Third, the TVA argues that the plaintiffs abandoned any challenge to their classifications by not pursuing their classification claims before the Merit Systems Protection Board (the MSPB). We address each of these arguments in turn and conclude that the plaintiffs exhausted their administrative remedies.

We conclude first that the plaintiffs were not required to complain about their separate classifications within 45 days of when they were reemployed and separately classified. The district court concluded that the plaintiffs fell under *Lorance*'s rule that the adoption of an allegedly discriminatory classification system triggers the running of the limitations period. *See id.* 490 U.S. at 911, 109 S. Ct. at 2268-69. The district court reasoned that because Congress amended Title VII to abrogate *Lorance* for non-federal employers, but failed to do so for federal employers, *Lorance* remained the rule for federal employers. The TVA echoes the district court's reasoning. The plaintiffs respond, however, that *Lorance* is inapplicable because *Lorance* involved a private employer that was not subject to the affirmative duty not to discriminate imposed by § 501 of the Act.

We review de novo this decision of law. *See Blackfeet Nat'l Bank v. Nelson*, 171 F.3d 1237, 1240 (11th Cir.), *cert. denied,* — U.S. —, 120 S. Ct. 497 (1999). We conclude that *Lorance* is inapplicable. First, under the Supreme Court's analysis, *Lorance*'s rule is narrow, applying only to facially neutral classification systems that were alleged to have a disparate impact. The Supreme Court noted that it had granted certiorari "to resolve a Circuit conflict on when the limitations period begins to run in a lawsuit arising out of a *seniority system not alleged to be discriminatory on its face or as presently applied*." *Lorance,* 490 U.S. at 903, 109 S. Ct. at 2264 (emphasis added). The

6

Supreme Court distinguished between a facially neutral seniority system upon which workers could reasonably rely with a facially discriminatory system, observing, "[t]here is no doubt, of course, that a facially discriminatory seniority system (one that treats similarly situated employees differently) can be challenged at any time . . . ." *Id.* at 912, 109 S. Ct. at 2269. Finally, in a footnote, the Supreme Court contrasted the facially neutral seniority system at issue in *Lorance* with a facially discriminatory system, noting that a facially discriminatory system "by definition discriminates each time it is applied." *Id.* at 912 n.5, 109 S. Ct. at 2269 n.5. Here, in contrast, record evidence supports that the classification system employed by the TVA was facially discriminatory.[12]

In addition, *Lorance* relied heavily on Title VII's special treatment of seniority systems. *See Beavers v. American Cast Iron Pipe* Co., 975 F.2d 792, 798-99 (11th Cir. 1992) (interpreting *Lorance* and noting its emphasis on 42 U.S.C. § 2000e-2(h)). In *Lorance,* the Supreme Court noted that, because of 42 U.S.C. § 2000e-2(h), "[s]eniority systems . . . are afforded special treatment under Title VII," and, "absent a discriminatory purpose, the operation of a seniority system cannot be an unlawful employment practice even if the system has some discriminatory consequences." *Lorance*, 490 U.S. at 904 and 905, 109 U.S. at 2265 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 81 and 82, 97 S. Ct. 2264, 2275 and 2276 (1977)). The Act, however, neither affords special treatment to seniority systems nor adopts Title VII's deference to seniority systems.

---

[12]     In fact, the TVA official who set up the REIN and Reentry programs testified that he intentionally kept these employees separate from "regular" employees. (*See* R.3-62-23 at 30-31.) The document that initiated the REIN Program (that was later expanded) instructed managers that REIN employees' "work duties should not be the same primary duties assigned to other employees in the managers' area. This difference is necessary to eliminate future problems with competitive levels for reductions-in-force purposes." (R.13-87-5 at Attach. 1.) Although the official alleged that the separate classifications were for the purpose of protecting the reemployed employees, his alleged protective motivation is contradicted by the fact that the plaintiffs were riffed according to their separate classifications.

Accordingly, *Lorance*'s reasoning does not control claims under the Act.

Instead, we conclude that the use of the classification system to rif the plaintiffs gave effect to the discriminatory classifications and started the running of the limitations period. *See id.* at 912 n.5, 109 S. Ct. at 2269 n.5. The plaintiffs did not feel the effects of their disability-based classifications until they were riffed, years after they were classified. Therefore, the plaintiffs were not required to complain within 45 days of their reemployment and separate classifications. We conclude that the plaintiffs' filing of timely administrative complaints following their RIFs were sufficient to challenge their alleged discriminatory classifications.

Second, the TVA argues that the plaintiffs failed to exhaust their administrative remedies because their administrative complaints concerned allegedly discriminatory RIFs, not allegedly discriminatory classifications. In other words, according to the TVA, because the plaintiffs' classification claims were not part of their administrative complaints, they cannot present those claims to the court. *See Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) ("A plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination."). The plaintiffs respond that their administrative complaints following the RIFs stated facts sufficient to trigger an investigation into their discriminatory classifications. We agree that the TVA's investigation of the plaintiffs claims of discriminatory RIFs could reasonably have been expected to include the fact that individuals who had been receiving FECA benefits and who were reemployed were classified separately for retention and RIF purposes.[13] Accordingly, we conclude that the plaintiffs' discriminatory-

---

[13]    In fact, some of the plaintiffs discussed this claim with the TVA's EO Investigator. (*See, e.g.,* R.2-35-7 at 11-12, R.2-35-13 at 16-17, R.2-35-14 at 8.)

8

classification claims were included in their administrative complaints and were properly before the district court. *See Mulhall*, 19 F.3d at 589 n.8.

Finally, the TVA argues that the plaintiffs abandoned any challenge to their classifications by not pursuing their claims before the MSPB. The plaintiffs respond that under *Doyle v. Marsh*, 777 F.2d 1526, 1535-37 (11th Cir. 1985), they were not required to pursue their claims before the MSPB. The plaintiffs are correct. Under *Doyle*, a federal employee who alleges that an agency action was discriminatory and files an administrative complaint may thereafter elect either to file suit in a district court or to pursue an administrative appeal to the MPSB. *See id.* at 1535. Thus, the plaintiffs' discriminatory-classification claims were properly before the district court and are properly before us on appeal.[14]

B. *Is working a "major life activity"?*

The Act prohibits federal agencies from discriminating in employment against otherwise

---

[14]  The TVA presents two additional arguments. First, the TVA contends that the plaintiffs' failure to challenge in their initial brief to this court the district court's conclusion that they had failed to show pretext requires us to summarily affirm the district court. The plaintiffs respond that this alternative ground applied only to their § 504 claims for a discriminatory RIF under the Act and that the TVA never proffered a nondiscriminatory reason for their separate classifications. The plaintiffs argue that because they have appealed only their § 501 claims for discriminatory classification, the district court's pretext analysis is irrelevant to their appeal. We conclude, however, that this alleged failure to show pretext is irrelevant because the plaintiffs have direct evidence that they were classified separately because of their disabilities. *See Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S. Ct. 613, 621-22 (1985) (noting that the *McDonnell Douglas* analysis is inapplicable where a plaintiff presents direct evidence of discrimination).

Second, the TVA argues that its adherence to RIF regulations justifies the plaintiffs' classifications. We reject this argument, however, as the plaintiffs appear to have been classified in a manner that contradicted a RIF regulation that requires competitive areas to be defined in "terms of the agency's organizational unit(s) and geographical location." 5 C.F.R. § 351.402. Furthermore, the TVA's observance of RIF regulations that operate to give effect to an impermissible classification does not excuse the classification.

qualified individuals with a disability. *See Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). The elements of a claim under § 501 of the Act are (1) an individual has a disability; (2) the individual is otherwise qualified for the position; and (3) the individual was subjected to unlawful discrimination as the result of his disability. *See id.* The Act defines "individual with a disability" as any person who: "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities; (ii) has a record of such an impairment; or (iii) is regarded as having such an impairment." 29 U.S.C. § 705(20)(B). In turn, "major life activities" are "functions, such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1614.203(a)(3).

The district court concluded, based on *Sutton v. United Airlines*, *Inc.,* 527 U.S. 471, 119 S. Ct. 2139 (1999), that working was not a "major life activity" under the Act. The plaintiffs dispute the district court's conclusion. The TVA rejoins that the district court correctly interpreted *Sutton* to eliminate working from the applicable list of "major life activities" under the Act. We review the district court's interpretation of the statute de novo. *See United States v. Pemco Aeroplex, Inc.,* 195 F.3d 1234, 1236 (11th Cir. 1999) (en banc).

The district court noted the Supreme Court's "reticence" to conclude that working is a "major life activity" under the Americans with Disabilities Act (ADA)[15] in *Sutton*. But the Supreme Court did not hold that working was not a "major life activity." Accordingly, our precedent treating working as a "major life activity" is still valid, and the district court erred by interpreting the Act contrary to our precedent. *See, e.g., Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1327 (11th

---

[15]    The Act adopts the ADA's standards for determining whether actionable discrimination has occurred. *See* 29 U.S.C. § 791(g).

Cir. 1998) (addressing whether a plaintiff was substantially limited in the "major life activity" of working and quoting 29 C.F.R. § 1630.2(i)'s definition of "major life activity" that includes "working").[16]

---

[16] Furthermore, in a post-*Sutton* ADA case, we have stated, "[a] physical or mental impairment qualifies as a disability under the ADA if it substantially limits a major life activity, such as working." *Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000) (citing 42 U.S.C. § 12102(2)(A)).

C. *Whether the district court properly granted summary judgment*

As we have noted, on summary judgment, the moving party bears the initial burden to show, by reference to materials on file, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Only after the moving party has satisfied that burden does the burden shift to the nonmoving party to demonstrate that summary judgment would be inappropriate because there exists a material issue of fact. *See id.* "[I]t is never enough [for the movant] simply to state that the non-moving party cannot meet its burden at trial." *Id.* Therefore, before determining whether the plaintiffs could meet their burden at trial, we must determine whether the TVA met its burden of *showing* the district court there were no issues of material fact to be determined at trial. Only if the TVA has done its job will we decide whether each plaintiff has shown that a genuine issue of material fact remains. *See Clark*, 929 F.2d at 609.

In order to determine whether the TVA has shown that the plaintiffs cannot establish that they are "disabled," or "substantially limited" in the "major life activity" of working, we first attempt to define these terms of art. EEOC regulations implementing the ADA[17] define the term "substantially limits" to mean:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). The regulations provide that the following factors should be considered

---

[17]    The Act adopts the ADA's standards to determine the existence of disability discrimination under the Act. *See* 29 U.S.C. § 791(g).

12

in determining whether an individual is substantially limited in a major life activity: "(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2).

EEOC regulations also give guidance for determining whether an individual is substantially limited in the major life activity of "working." The ability to work is substantially limited (among other indicia) if the plaintiff is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes *as compared to the average person having comparable training, skills and abilities*." 29 C.F.R. § 1630.2(j)(3)(i) (emphasis added). Thus, whether a plaintiff is substantially limited in the major life activity of working is determined by comparing his ability to perform jobs with the ability of a person without physical limitations who has comparable education, job skills, and talent. But the regulations also make clear that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*

The regulations further instruct that a court may consider: the geographical area to which the individual has reasonable access, the job from which the individual has been disqualified because of an impairment, and the number and types of jobs using and not using similar training, knowledge, skills, or abilities, within that geographical area, from which the individual is also disqualified because of the impairment. *See* 29 C.F.R. § 1630.2(j)(3)(ii). The Supreme Court explains:

> To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. If jobs utilizing an individual's *skills* (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.

13

*Sutton v. United Airlines, Inc.*, — U.S. —, —, 119 S. Ct. 2139, 2151 (1999)(further noting that the court "should" consider these factors, in contrast to the regulation's instruction that these factors "may" be considered) (emphasis added).[18]

Although the TVA concedes that the plaintiffs suffered on-the-job injuries that caused serious physical impairments and permanent restrictions, the TVA argues nonetheless that the plaintiffs' deposition testimony showed that they were not "disabled" within the meaning of the Act. In other words, the plaintiffs could not establish the first element of their claims because they had not shown that they were "substantially limited" in the "major life activity" of working. On appeal, the TVA makes only generalized arguments regarding the plaintiffs' collective inability to show that they are disabled within the meaning of the Act. We have reviewed the summary judgment briefs filed with the district court in order to understand the specific arguments applicable to each individual plaintiff. Our review of the record reveals that the plaintiffs fall roughly into four categories: (1) plaintiffs who were qualified to perform the essential functions of their reemployment positions at the TVA; (2) plaintiffs who were qualified for their reemployment positions at the TVA and who admitted that they were qualified to perform other positions; (3) plaintiffs who were qualified for their reemployment positions at the TVA and who were vocationally assessed as

---

[18]     Although the TVA argues that to avoid summary judgment the plaintiffs were required to present expert demographic evidence regarding the number of jobs available or unavailable in the relevant geographic area, the TVA does not provide any controlling authority for its rule. Accordingly, because we have been instructed that we "may" and "should" (not "shall" or "must") consider the existence of jobs in the relevant geographical area, without reference to whether a vocational expert is required, we conclude that expert vocational evidence, although instructive, is not necessary to establish that a person is substantially limited in the major life activity of working. Furthermore, a plaintiff could testify from his or her own extensive job search whether other jobs that he or she could perform were available in the geographical area.

14

qualified to perform other positions; and (4) plaintiffs who were qualified for their reemployment positions at the TVA and who were employed in other positions at the time of their depositions. We address each group in turn to determine whether the TVA met its burden on summary judgment and, if so, whether each plaintiff has shown that a genuine issue of material fact remains.

First, the TVA argued below that nine plaintiffs could not show that they are substantially limited in the major life activity of working because they admitted that they were qualified to perform their TVA reemployment jobs and actually performed those jobs successfully for a number of years prior to the RIFs. These nine plaintiffs are J. Chandler, L. Chandler, Desruisseaux, Gothard, Greene, Hovater, Mullins, Putnam, and Shelton. We conclude that the fact that these nine plaintiffs successfully performed jobs that were tailored to their physical limitations does not establish that they cannot show that they are disabled. Rather, the success of these plaintiffs in their reemployment jobs simply establishes that there may be some jobs that they can perform. There remains a genuine issue of material fact whether jobs utilizing these plaintiffs' skills are available in the relevant geographical areas so as to preclude a finding that these plaintiffs are substantially limited in the major life activity of working. Accordingly, we conclude that the TVA failed to meet its burden on summary judgment and that the district court erred by granting summary judgment against these nine plaintiffs.

Second, the TVA argued that another nine plaintiffs could not establish that they were substantially limited in the major life activity of working because they successfully performed their reemployment jobs and admitted in deposition testimony that they were qualified for other jobs. This second group of plaintiffs includes: Bailey, Coats, Crow, Dutton, Mansell, Miles, Murks, Speer, and Tucker. Although this argument comes closer to meeting the TVA's burden on summary

15

judgment, we conclude that it is insufficient to show that there is no genuine issue of material fact whether these plaintiffs are substantially limited in the major life activity of working. We note that these plaintiffs testified that they applied for numerous "regular" (as opposed to reemployment) positions at the TVA and outside of the TVA and that they thought they could successfully perform the essential functions of these positions. But not one of these plaintiffs was offered a "regular" position by the TVA or any other employer. This evidence supports an inference that the TVA and other employers at least regarded these plaintiffs as unable to perform the jobs at issue. Accordingly, there remains a genuine issue of material fact as to whether these plaintiffs are substantially limited in the major life activity of working, and the district court erred by holding otherwise.

The third group contains only two plaintiffs: Smith and Williams. The TVA argued that Smith and Williams, who successfully performed their reemployment jobs for several years and who received vocational assessments that concluded that they were qualified to perform numerous jobs, cannot show that they are substantially limited in the major life activity of working. Smith's vocational assessment was performed in early 1991, after he was released to return to work following his recovery from a lower back strain in 1989. In November 1993, Smith re-injured his back and was unable to work until February 1994; at that time, he returned to work wearing a full-body brace. We note that the TVA has not pointed to a vocational assessment that was completed following Smith's re-injury of his back or to any evidence showing that the earlier vocational assessment remained accurate after Smith re-injured his back. Thus, we conclude that the TVA has not met its burden on summary judgment and reverse the district court's summary judgment against Smith.

16

The vocational assessment of Williams does not suffer the same infirmity, however, because although the TVA's vocational assessment of Williams was performed almost a decade ago, there is no evidence in the record that Williams's physical condition has changed. Accordingly, we conclude that, for plaintiff Williams, the TVA has met its initial burden on summary judgment.

Williams contends that he is disabled nonetheless because the permanent restrictions from his ankle injury, including no squatting or bending, no prolonged walking or standing, and no climbing in unprotected areas, render him unable to perform the entire class of craft work,[19] including construction and boilermaker work. Williams argues that his inability to perform craft work equates to an inability to perform a substantial class of jobs within the meaning of 29 C.F.R. § 1630.2(j)(3)(i).[20] But Williams admitted that his vocational assessment reflected that there were jobs that he could perform despite his physical limitations. The TVA argues, therefore, that jobs utilizing Williams's skills are available, establishing that Williams is not precluded from a substantial class of jobs. *See Sutton*, — U.S. at —, 119 S. Ct. at 2151. The availability of such jobs is in doubt, however, because

---

[19]     In *Reed v. Heil Co.*, we noted that other circuits have held that heavy lifting restrictions do not constitute a disability. *See* 206 F.3d 1055, 1061 (11th Cir. 2000). We resolved the case, however, without deciding whether restrictions to avoid heavy lifting of more than 45 or 50 pounds and extra heavy manual labor established a disability under the ADA. *See id.* We emphasize that this opinion does not answer the question left open in *Reed* because the impairments at issue here differ from and exceed those considered in *Reed* and because our disability determinations also consider whether jobs using the plaintiffs' skills remain.

[20]     We note that Williams has offered the expert testimony of plaintiff Mullins in support of this fact. (*See* R.3-62-1 at ¶¶ 5-6.) Although Mullins claims to be qualified to give such expert testimony because he worked as a general foreman for the TVA for eleven years, supervising craftworkers of all types, (*see id.* at ¶¶ 2-4), the TVA argues that Mullins is not qualified to give expert testimony because he "is not a medical, labor, or vocational expert." TVA's Br. at 30. We have never required such a showing, however, and conclude that Mullins's experience would qualify him to give expert testimony under Fed. R. Evid. 702.

17

Williams stated that, at about the same time that the vocational assessment was conducted, he contacted several (4 to 6) employers every week for 26 weeks without receiving a job offer. Viewing the facts and drawing all inferences therefrom in the light most favorable to Williams, we conclude that he has shown a remaining issue of material fact regarding whether he was substantially limited in the major life activity of working and reverse the district court's summary judgment against him.

The final class of plaintiffs includes four plaintiffs who were employed in some capacity when they were deposed: Massey, Rainer, Shores, and Smart. We conclude that because the TVA has actually shown that these four plaintiffs were actually employed, it has met its initial burden on summary judgment. We examine the evidence presented by each plaintiff individually to determine whether he has shown a remaining issue of material fact.

Plaintiff Rainer, who worked for the TVA as a pipefitter and steamfitter prior to suffering a back injury, held two jobs following his termination by RIF. First, he worked for a month as a tool-room clerk and tool repairman for an independent contractor that did work for the TVA during an outage. After that job ended, Rainer accepted a job as a sales associate at a local Wal-Mart store. The fact that Rainer is employed, although not dispositive, weighs against a finding that he is substantially limited in the major life activity of working. The TVA points out that Rainer was employed in two separate clerk positions and as a maintenance mechanic during his reemployment at the TVA. We note, however, that these three jobs were specifically assigned to Rainer because they satisfied his medical restrictions. We also emphasize that Rainer's ability to work must be "compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Although this is another close case, we conclude, on balance, that a jury could infer

18

that Rainer, a former skilled pipefitter and steamfitter who has been reduced to working as a salesman at Wal-Mart, is substantially limited in the major life activity of working. We therefore reverse the district court's summary judgment against him.

Smart is a former laborer and journeyman painter who suffered a serious head injury, requiring brain surgery and resulting in extremely poor balance, a lack of coordination, a speech impediment, and some diminution in his mental capacity. His restrictions forbid him from climbing or working with any dangerous equipment. As a result of a near fall during his reemployment at the TVA, Smart injured a knee; he apparently had surgery and now wears a knee brace. Following his termination, Smart worked for two weeks loading trailers in a temporary position through the Manpower employment agency. He then worked at Sonics, a fast food restaurant. At the time of his deposition, Smart was working as a temporary employee at a plant that manufactures compact discs. We note that Smart, who was a skilled painter, has not been able to obtain permanent employment. Also, as the district court noted, Smart has demonstrated that he has suffered significant physical and mental impairments. We conclude, on balance, that Smart has shown a remaining issue of material fact whether he is "disabled" within the meaning of the Act and reverse the district court's summary judgment against him.[21]

Massey admitted that he is not limited in his ability to work; in fact, he has worked almost continuously since he suffered a ruptured disc in his back. Massey argues, however, that he is unable to do the broad class of jobs of heavy construction. Furthermore, Massey testified that

---

[21] We have reversed the summary judgment against twenty-two of the plaintiffs, concluding either that the TVA did not meet its initial burden or that they had met their burden of showing a question of material fact whether they were "disabled" under the Act. Accordingly, we do not address whether the TVA either had a record of their disabilities or regarded them as disabled.

19

despite the fact that his home was still in Mississippi, the job that he found 2-3 months following the RIF and that he still held at the time of his deposition was in New Jersey. The TVA points out that Massey's post-RIF job actually paid a higher salary than his REIN job with the TVA. We conclude that Massey's quick finding of better-paid employment demonstrates that he is not "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i). Accordingly, we affirm the district court's grant of summary judgment against Massey.

Shores, a former carpenter, injured his elbow, shoulder, hip, and back in a fall from a ladder. Following his termination from his REIN position, the TVA and another contractor offered Shores a temporary position; however, Shores declined both job offers, and instead, is self-employed, working to set up a nursery business. Given these facts, we conclude that Shores has not shown a remaining issue of material fact regarding whether he is substantially limited in the major life activity of working and affirm the district court's grant of summary judgment against him.[22]

IV. *Conclusion*

For the foregoing reasons, we:

1. Affirm the district court's grant of summary judgment against plaintiffs Massey and Shores;

2. Reverse the district court's grant of summary judgment against plaintiffs Bailey, Jerry Chandler, Lonner T, Chandler, Coats, Crow, Desruisseaux, Dutton, Gothard, Greene, Hovater,

---

[22]   We also conclude that neither Massey nor Shores has shown a question of material fact whether the TVA had a record that they were disabled or regarded them as disabled within the meaning of the Act.

Mansell, Miles, Mullins, Murks, Putnam, Rainer, Shelton, Smart Smith, Speer, Tucker, and Williams; and

3. Remand the actions of the 22 plaintiffs named in 2. above.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.